Stewart *v.* Howe.

————————◦◦◦————————

AMOS STEWART, Appellant, *v.* SOPHIA HOWE, by her next friend, JOHN HOWE, Appellee.

APPEAL FROM MASSAC.

An infant under ten years of age may maintain an action, by her next friend, for slanderous words charging her with theft.

THIS was an action for slander, commenced by Sophia Howe, by her next friend, complaining of Amos Stewart. The words, as proved, were: "She stole my money;" "she stole ninety dollars;" "she is a smart little thief." It was also in proof that Sophia was but nine years and nine months old.

The Circuit Court refused to instruct that, if the jury believed from the evidence that at the time of the speaking and publishing of the words laid in the declaration, the plaintiff was under the age of ten years, they must find the defendant not guilty. But the court did instruct the jury, that it made no difference whether the plaintiff was, at the time of said speaking and publishing, more or less than ten years old, for, in either case, if the jury find the issue for the plaintiff, the verdict ought to be for the plaintiff, and the jury can only regard the age of the plaintiff upon the question of damages.

The cause was tried before PARRISH, Judge, and a jury, at the October term, 1855, of the Massac Circuit Court; verdict and judgment for twenty-five dollars. Motions for a new trial and in arrest of judgment were made by the defendant in the court below, which were overruled.

T. G. C. DAVIS and R. S. NELSON, for Appellant.

J. JACK, for Appellee.

SCATES, C. J.   The slanderer insists, in effect, upon the infancy of his intended victim, in justification of his malice.   Feejee cannibalism could ask no greater license or security for the gratification and satiety of its unnatural and morbid appetite.   I must confess that while the law recognizes the speaking and publication of actionable words as a wrong and injury, for which it offers a remedy, I shall feel, if judges may be allowed that pardonable weakness, that such a defence has not a solitary grace to recommend it to favor.   I would sooner see the action abolished, than to read out infancy from the pale of its protection.   If there can be a redeeming trait in the character of the cormorant, it must be in satiating his gluttony upon the strong and powerful, at the hazard of physical retribution.   But judges have no right to feel, or at least to make it a predicate of their judgment.   It is the head, and not the heart; and from it must proceed justice, legal justice, though the heavens fall by the fiat.

Chief Justice Sewall said of the defence: " It may be justly stigmatized as base and dishonorable ; it may be considered as unjust, when offered under circumstances like those now in evidence;" *Phillips' Limerick Academy* v. *Davis,* 11 Mass. R. 115; but he sustained the defence as legal.   So here I should not pause or hesitate to sustain the plaintiff, however hateful his occupation, when he has shown his right to legal impunity for reputational infanticide.   We must therefore appeal to and abide the law as evidenced by the decisions.

Spencer, J., in *Brooker* v. *Coffin,* 5 John. R. 191, in solving the question whether a general charge of common prostitution was actionable, laid down a rule as a test, that " in case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude or subject him to infamous punishment, then the words will be in themselves actionable ; and Baron Comyns considers the test to be, whether the crime is indictable or not, (1 Com., tit. Action on the Case for Defamation, F. 20.) "   And this rule has been approved in many cases.   *Schæffer* v. *Kintzer,* 1 Binney R. 542; *McClurg* v. *Ross,*

5 Binn. R. 218; *Andres and wife* v. *Koppenheafer*, 3 Serg. & Raw. R. 259; *Mc Cuen* v. *Ludlum*, 2 Harrison N. J. R. 17.

Again, in *Van Ness* v. *Hamilton et al.*, 19 John. R. 367, Spencer, J., re-defines a test rule of the actionability of words of spoken slander: "The words must either have produced a temporal loss to the plaintiff, by reason of special damage sustained from their being spoken, or they must convey a charge of some act criminal in itself, and indictable as such, and subjecting the party to an infamous punishment, or they must impute some indictable offence involving moral turpitude. To maintain an action for a libel, it is not necessary that an indictable offence should be imputed to the plaintiff. If a libel holds a party up to public scorn, contempt and ridicule, it is actionable (9 John. R. 214; 7 John. R. 264)." This is approved in the above case of *Mc Cuen* v. *Ludlum*, and indeed seems warranted not only by the modern but earlier reports.

Thus in *Ogden* v. *Turner*, 6 Mod. R. 104: "There goes Ogden, who is one of those that stole Lord S.'s deer," it was held that "words which are of themselves actionable, without regard to the person, or foreign help, must either endanger the party's life, or subject him to infamous punishment; and it is not enough that he may be fined and imprisoned, for if one be found guilty of any common trespass, he shall be fined and imprisoned, yet none will say, that to say one has committed a trespass, will bear an action; or at least the thing charged upon him must, in itself, be scandalous; and this here is, that 'he stole a deer,' which is a *feræ naturæ*, and therefore not scandalous."

In *Purdy* v. *Stacy*, 5 Burr R. 2698, it was held that a charge of having given £200 for a warrant to be purser of a man-of-war, was not actionable, because it did not show that the money was given to the Commissioners of the Admiralty, who appoint pursers. Given to them, it would be criminal in the corruptor and the corrupted. "In the present case it is defectively laid, and does not appear to be defamation, or a charge of any indictable crime."

Comyns enumerates a great many actionable charges of this class, which endanger life, as charges of treason, murder, or other felony; corporal punishment, as perjury and subornation of perjury, and others which subject a party to indictment, &c. 1 Comyns' Dig., tit. Actions on the Case for Defamation, D. 1 to D. 10.

The same general rule is shown by the cases where the words were held not actionable for the same reasons. Thus in *Mayne* v. *Digle*, Freeman R. 46, in 1672, with a colloquium of encompassing a house to break it open and rob it, Digle said: "It was Mayne and J. Disne, that were about to rob Ed. Cooper's

house," which merely imputed a design, and no action towards its accomplishment. *Hext* v. *Yeomans*, cited in *Cromwell* v. *Denny*, 2 Coke R. pp. 14, 15, held that words charging another with seeking his life, and imputing a suspicion of felony were not actionable, for like reasons, with many other illustrations of like character. "Thy boy (plaintiff's wife's son,) hath cut my purse, and thou hast received it, knowing it, and hath the rings and money that were there, in thy hand, therefore, I charge thee with felony," held not actionable, "for it doth not appear that the purse was cut *feloniously*, and then the receiving of the boy and the things which were in the purse, is not felony." *Cox* v. *Humphreys*, Croke Eliz. 889. And herewith agree the modern rulings, except an innovation now and then upon the common law, and an occasional statutory addition thereto, embracing charges of false swearing, want of chastity, and such like very scandalous matters.

Lord Holt said, in *Ogden* v. *Turner*, " that to say of a young woman that ' she had a bastard,' is a very great scandal, and for which, if he could, he would encourage an action; but it is not actionable, because it is a spiritual defamation, punishable in the spiritual courts. So it is to call a man a 'heretick.'"

This point is then well settled, and fortified by authority, and I have cited more at large to show that I admit the rule with its alleged reasons, whenever the question is, and in *settling*, *whether words are actionable in themselves*.

What then follows in its application, with the reasons upon which it is founded, to the case in hand? The words here are clearly actionable in themselves, in their ordinary and legal import.

But it is contended by the plaintiff's counsel, and with great force and plausible and ingenious reasoning, that the reasons for the actionable character of the words themselves, extend to and include the actual state and condition of the defendant here, and the facts establishing that condition. And when from the condition of the defendant she is not, as matter of law, punishable in that condition, although a punishable crime is charged, yet thereby the words cease to be actionable.

This is truly to me a new view of the subject. I had been accustomed to look at the charge, in order to determine its slanderous character, through the medium of the characteristics that distinguish actionable from non-actionable charges.

Now we are required to turn from the character of the charge, to the character of the subject of it. Punishableness is now said to be an essential, an indispensable, element of fact in the person accused, as well as for the crime alleged or imputed.

Therefore, as by our statute, no child under ten years can be

punished for larceny, these words, though actionable at common law, and imputing a crime, infamous in character, and punishable by indictment, fine and imprisonment, are not actionable when spoken of one not subject to that punishment in fact, by reason of the exemption of persons of such tender years. Scandal, as an element of slander, and malice, are lost sight of, by this view. Is this supported by the authorities, and the nature of slander, as an injury, or the reasons for offering, and the various grounds upon which redress will be afforded ?

I think not, and must be indulged in a further view of the doctrine of slander, in support of the distinctions, which, I think exist. Indictableness and punishableness for the crime imputed by the words, and the infamy and scandal attendant upon such crimes and punishments, seem to have been chief elements, with the founders of the law of slander, in fixing upon rules for ascertaining and redressing injuries of this sort, arising from *that class of charges* which imputed *crime.* But this by no means comprehended the extent of that system, which was adopted on this subject.

By Statute 2, Rich. 2–5, confirmed by Stat. 12, Rich. 2–11, those who devise or speak false news, lies, or other such false things of the prelates, dukes, earls, barons and other nobles and great men of the realm, and of the chancellor, treasurer, clerk of the privy seal, stewart of the king's house, justices of the one bench or the other, and other great officers of the realm, &c., and which is part of our common law, so far as the characters are found amongst us, is the foundation of our scandalum magnatum—the clergy found protection from charges which would scandalize and disgrace as well as those from which temporal injury, by loss of place, might ensue. The owner and the heir to real estate found protection under this law of slander, from claims to, or aspersions of, title—and charges of bastardy which might work a disherison of his descent. Professional men and trades-people were within its pale in their profession and callings. Legislators and justices of the peace had over them the same shield—and *all* persons in every walk and condition of life might seek reparation and redress for the *particular damages* occasioned by false, malicious and defamatory language, whether in affairs of business, of the heart, or servile character only. See 1 Comyns' Dig., tit. Actions on the Case for Defamation, C. 1, 2, D. 1 to 30, E. 1 to 9, F. 1 to 22. And to all this is added the law of libel, where redress is given for things not actionable when merely spoken—but which are false, malicious and defamatory.

The law as a system in this branch of it, in relation to slander, had a larger view, and a wider scope than is supposed by

the views contended for in the argument. In an early day it reached a great way to redress the injuries inflicted by the tongue, that unruly evil, full of deadly poison, which no man can tame, but which will be punished. In *King* v. *Lake*, 2. Ventres R. 28, C. J. Vaughn said that, in ancient books, we read nothing of words that did not concern life. "The growth of these actions will spoil all communications;" "their progress extends to all professions." But the other three justices held that an action would lie for writing to the client of an attorney, "that plaintiff would give vexatious and ill counsel, and stir up a suit, and that he would milk her purse, and fill his own large pockets," by which that and other clients were lost.

In *Gainford* v. *Tuke*, Cro. Jas. 536, the words were, "Thou wast in Launceston goal for coining." Plaintiff replied, "If I was there, I answered it well enough." Defendant rejoined, "Yea, you were burnt in the hand for it." They were held actionable, for "these are malicious words, and show his intent to accuse him for being imprisoned for coining"—and subsequent words do not diminish, but aggravate. So in *Boston* v. *Tatum*, Cro. Jas. 623, words in the past tense : "He was a thief and stole my gold," were actionable, "for it shall be intended to be maliciously spoken, and to discredit him. And it is a great slander to be once a thief ;—for although a pardon may discharge him of the punishment, yet the scandal of the offence remains ; for *pœna potest redimi, culpa perennis erit ;* and it ought not to be intended, that it was when he was a child."

These and other cases are referred to by Mr. Starkie in his treatise on slander, 1 Stark. Sland. 19, 20, for the purpose of showing that criminal liability is not always the peculiar and exclusive ground of action, for even this class of slanderous words ;—and a future liability to punishment for the offence charged, if true, is not indispensable to maintain this action. *Van Aiken* v. *Westfall*, 14 John. R. 232, is upon the same ground, for the words spoken, "he is a thief, and has stolen fifty dollars in cash from Jacob De Witt," was of a transaction in another State, and although the objection was taken, that he would not be liable to punishment in N. York, if true, yet the court held that the action would lie. This has been feebly challenged in a note to 1 Stark. on Sland. 21, note 1, p. 43, note 1, as uncalled for and against the rule laid down in *Brooker* v. *Coffin*, 5 John. R. 188.

Whether called for as a decision, or thrown out as a dictum, I think both the law and good sense will sustain it—and I am unable to detect the conflict between the decisions. In *Brooker* v. *Coffin*, the court laid down a rule to test the actionable character of words imputing a want of chastity—and in *Van Aiken*

Stewart *v.* Howe.

v. *Westfall*, the court simply applied the well settled rule of law upon words actionable in themselves, by holding the defendant liable for speaking them, without regard to his special pleading by way of defence of his victim, against a criminal liability for what he had charged.

Once license malice to prefer all charges of scandalous and infamous matter, and justify it upon the ground that there is no local, or present, or future liability criminally for it, if true, and the law of slander will become a mockery and a means, rather than a redress for slanders and injuries of this character. No better illustration can be given than this case. She is charged with stealing. She is only a few days under ten years. The statute exempts infants under ten, from criminal punishment, upon an inflexible rule, deeming them *doli incapax* for want of intellect. The common law, between seven and fourteen, fixed upon the flexible rule of capacity, in fact, to discern between right and wrong. This is the more sensible, and ours the more convenient and easy of application, and more tender of life and liberty. It is a rule of policy and humanity. But we all know from observation the precocious development of some minds as well as bodies. Imputations of this character, made upon a young mind of precocious and clear discernment, will disparage and scandalize as fully and maturely as if made of adults, and indeed, much more than some adults, if the degree of intelligence of the accused, is to be the measure of damages. When we adopt the imbecility of infancy as a test of the actionability of words, we should also adopt the degree or quantum of intelligence as the measure of damages in adults.

The law may and will spare infancy, but the slanderer cries aloud and spares not. I am not called on to say how young a plaintiff may sustain this action for words imputing crime, but, as called upon in this case, I am compelled to say that this plaintiff shall not shield himself from accountability, by alleging defendant's infancy, which should have afforded a conclusive reason for charitable forbearance of his malice, and shall not constitute a shield and ground of defence to him.

*Judgment affirmed.*

Skinner, J., dissented.