ONEL MUNDEN, by next friend, Appellant, v. P. S. HARRIS et al., Respondents.

Kansas City Court of Appeals, January 30, 1911.

1. **RIGHT OF PRIVACY:** Property: Injunction. The right of privacy is a legal right of property, the principle of which has been ever recognized and it is entitled to protection at the hand of the courts. Its invasion may be restrained in equity by injunction.

2. ———: Action at Law: Damages: Pleading. General damages may be recovered in an action at law for a violation of the right of privacy, without an allegation of special damage. And if malice be shown, exemplary damages may be had.

3. ———: ———: Picture: Advertisement. If one published the picture of another without his consent, it is an invasion of his right of privacy and a violation of his right of property, which may be restrained by injunction, or redressed in damages, both general and special.

4. ———: Enjoyment of Life: Seclusion. The right of privacy includes the right to enjoy life and pursue happiness, subject only to the rights of others. A person may therefore adopt a life of seclusion with a right to remain undisturbed if he so desires.

5. ———: Waiver of Right: Public Character: Society. Though one has the right of privacy in his picture as a right of property, he may waive the right by becoming a public character, or by conduct exciting public interest. And such right does not subvert those rights in others which spring from social and business conditions, whereby they may freely speak of and refer to every other person in the social organization, so long as it is not slander.

Munden v. Harris.

6. ——: Picture: Libel: Advertisement. Where persons in business published a child's picture connected with the following words as an advertisement, viz: "Papa is going to buy mamma an Elgin watch for a present, and some one (I mustn't tell who) is going to buy my big sister a diamond ring. So don't you think you ought to buy me something? The payments are so easy, you'll never miss the money, if you get it of Harris-Goar Co., 1207 Grand Ave., Kansas City Mo. Gifts for Everybody, Everywhere in their Free Catalogue." It was *held* to be a libel on the child for which general and exemplary damages could be recovered.

7. ——: Infant: Tender Years: Trespass. An infant of tender years, though *doli incapax*, may be liable for compensatory damages for trespass, as malice is not necessary to that action. But punitive damages cannot be recovered in such a case.

8. INFANT: Tender Years: Libel. An infant of tender years, too young to be capable of malice or evil intent, cannot be guilty of libel or slander. And the law will adopt the age fixed by the common law for responsibility for crime and it is *held* that an infant under seven years of age cannot be guilty of libel or slander, since he is *doli incapax*.

9. ——: Libel. Notwithstanding an infant is *doli incapax* and incapable of libel or slander, yet he may be libelled or slandered, since the two conditions are not correlative.

10. ——: Tender Years: Ridicule. An infant five years of age may be libelled by publication of his picture in connection with words purporting to have been uttered by him which would render him liable to the contempt and ridicule of his fellows.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED AND REMANDED.

*John C. Nipp* for appellant.

(1) The appellant has a legal right of privacy, as alleged in the first count, and without his consent no one has the right to use his photograph as an advertisement to exploit goods for sale. It is not necessary that special damages be averred. Pavesich v. Life Ins. Co., 122 Ga. 190, 50 S. E. 68; Rhodes v. Sperry & Hutchinson Co., 193 N. Y. 223, 85 N. E. 1097; Foster-Milburn

Co. v. Chinn, 120 S. W. (Ky.) 364; Peck v. Tribune Co., 214 U. S. 185 (1909). (2) The allegations and matters set forth in the second count constitute a libel, in that the printed portion of the advertisement is a falsehood which was never uttered by the plaintiff, and which imputes to him a falsehood and tends to expose him to public hatred, contempt and ridicule, as being a liar. Riley v. Lee, 88 Ky. 603, 11 S. W. 713; Monson v. Lathrop, 96 Wis. 386, 71 N. W. 596; R. S. 1909, sec. 4818; Colvard v. Black, 110 Ga. 642, 36 S. E. 80; Triggs v. Sun Printing Ass'n, 179 N. Y. 144, 71 N. E. 739. (3) The appellant's first amended petition set forth the actual damages in each count sufficiently. Nicholson v. Rogers, 129 Mo. 139; Hall v. Jennings, 87 Mo. App. 633. (4) Each count of the petition states a cause of action for, at least, nominal damages. Nominal damages will sustain a prayer for punitive damages. Ferguson v. Chron. Pub. Co., 72 Mo. App. 462.

*Haff & Michaels* for respondents.

(1) At common law there is no "right of privacy" entitling one to damages for the unauthorized use of his photograph in connection with an advertisement. Murray v. Lith. Co., 8 Misc. 36, 28 N. Y. Supp. 271; Atkinson v. Doherty & Co., 121 Mich. 372, 80 N. W. 285; Robertson v. Folding Box Co., 171 N. Y. 538, 64 N. E. 442; Henry v. Cherry & Webb, — R. I. —, 73 Atl. 97; Peck v. Tribune Co., 154 Fed. 330, 214 U. S. 185; Edison v. Edison Polyform Co. (N. J.), 67 Atl. 392; Crutcher v. Big Four, 132 Mo. App. 311. (2) The allegations set forth in the second count of plaintiff's first amended petition do not make out a cause of action for libel. 31 Cyc. 333, 334, 337; sec. 4818, R. S. 1909; Farley v. Publishing Co., 113 Mo. App. 225; 25 Cyc. 253; Crutcher v. Big Four, 132 Mo. App. 317; Kenworthy v. Journal Co., 117 Mo. App. 327; Julian v. K. C. Star Co., 209 Mo. 35; Ukman v. Daily Record, 189 Mo. 378, 394.

ELLISON, J.—This action is stated in a petition with two counts, one for damages for disturbing plaintiff's privacy by publishing his picture without his consent; and the other for libel in publishing the picture along with false statements attributed to plaintiff. In each count punitive damages were asked, but no special damages were alleged. Defendants demurred to the petition as not stating a cause of action. The demurrer was sustained, and plaintiff refusing to amend, judgment was rendered against him and he appealed.

Plaintiff is an infant five years old and the action was brought through a "next friend" as required by statute. The facts stated in the first count of the petition are that defendants, being jewelry merchants in Kansas City, invaded plaintiff's right of privacy by willfully and maliciously using, publishing and circulating his picture for advertising their business of selling merchandise; thereby destroying his privacy and humiliating, annoying and disgracing him and exposing him to public contempt.

In the second count the facts, after certain preliminary allegations, are stated to be that: "defendants did wrongfully and maliciously compose, print and publish and cause to be composed, printed and published, of and concerning plaintiff, together with his photograph, the following false, defamatory, scandalous and malicious libel meaning thereby, and so understood by persons who saw the same, to impute to plaintiff a falsehood and attributing to plaintiff in said publication, a statement which was false and malicious, to-wit: 'Papa is going to buy mamma an Elgin watch for a present, and some one (I musn't tell who) is going to buy my big sister a diamond ring. So don't you think you ought to buy me something? The payments are so easy, you'll never miss the money if you get it of Harris-Goar Co., 1207 Grand Ave., Kansas City, Mo., Gifts for Everybody, Everywhere in their Free Catalogue.'"

Picture
of
Plaintiff.

The upshot of defendants' position in support of their demurrer to the first count, is that there is no right of privacy of which the law will take notice; or, stated differently, their argument is that the law does not afford redress for an invasion by one person of another's privacy unless it is accompanied by some injury to his property or interference therewith; and that the mere printing and publishing one's picture does not and cannot affect his property. The cases principally relied upon by defendants are those of Roberson v. Rochester Folding Box Co., 171 N. Y. 538; Henry v. Cherry & Webb, ——— R. I. ——— (73 Atl. 97.); and Atkinson v. Doherty, 121 Mich. 372; in the first of which, in the course of an interesting opinion concurred in by a majority of the court, is found a course of reasoning which denies that a right of privacy exists which can be protected by a court of equity. That case was a bill in equity to enjoin a mercantile firm from publishing a young woman's picture as an attraction to an accompanying advertisement of a certain brand of flour. The court in denying the right of equity to protect a person thus embarrassed, shows its unfriendliness to the claim in the following language: ["The so-called right of privacy is, as the phrase suggests, founded upon the claim that a man has the right to pass through this world, if he wills, without having his picture published, his business enterprises discussed, his successful experiments written up for the benefit of others, or his eccentricities commented upon either in handbills, circulars, catalogues, peridocals or newspapers, and, necessarily, that the things which may not be written and published of him must not be spoken of him by his neighbors, whether the comment be favorable or otherwise."]

The conclusion of the court is based much upon the statement that the case there presented was without precedent, and, while admitting that equity, in the beginning and early part of its administration, was made

up of growth, case by case, which was without prece-
dent, being based merely upon the conscience of the
chancellor, yet there came a time when its growth ceased
and what was formerly the personal conscience of the
chancellor, became a "juridical conscience", which would
only permit relief to be administered in cases where it
had been administered before, save in those instances
"where there can be found a clear and unequivocal
principle of the common law which either directly or
mediately governs it, or which by analogy or parity of
reasoning ought to govern it." With such considera-
tion as a guiding thought, the court refused relief be-
cause there was no precedent for it and it did not appear
to be within any recognized legal principle. This view
is approved in Henry v. Cherry & Webb, which was an
action at law in the nature of trespass for damages for
an invasion of the right of privacy by using and publish-
ing the plaintiff's picture as an advertisement in aid
of the sale of merchandise. In such respect it was like
Roberson v. Rochester Folding Box Co. Though one
was an application in equity for restraint and the other
was for damages at law, yet as each, by similar reason-
ing, denied that there was any such right, both denied
any remedy.

The remaining case (Atkinson v. Doherty & Co.)
was where after the death of John Atkinson, a celebrated
lawyer, the defendants, who were manufacturers of cig-
ars, named a brand of their make the "John Atkinson
Cigar," and placed the name, together with his picture,
as a label on cigar boxes. His widow sought to restrain
such acts by injunction. Her right was denied; and
again the reasoning in Roberson v. Rochester Folding
Box Co. was approved. But it will be observed that
while the Roberson case involved the right of privacy of
the plaintiff's own picture, the Atkinson case, like that
of Schuyler v. Curtis, 147 N. Y. 434, sought to protect
the right of privacy to the name of a deceased relative,

153 App—42

a case which did not call for much that was said in the course of the opinion, concerning the general right of privacy, except by way of argument or illustration; and what was said beyond the right of privacy which may be claimed by relatives of a deceased, must be regarded as *dictum*. The point of agreement in these cases is that no relief can be had by way of protecting... right of privacy, for the reason that it was not a right of property and did not fall within any legal principle.

But courts which refuse assent to those decisions assert that it *is* a right of property and that there *is* such legal principle, old and well recognized; though they concede the case is new in its facts. The main ground for division of opinion in these courts is at last found to be based upon those conflicting assertions. So therefore it appears that if it can be established that a person has a property right in his picture, those who now deny the existence of a legal right of privacy would freely concede a remedy to restrain its invasion, for all agree that equity will forbid an interference with one's right of property.

Property is not necessarily a taxable thing any more than it is always a tangible thing. It may consist of things incorporeal, and things incorporeal may consist of rights common in every man. One is not compelled to show that he used, or intended to use, any right which he has in order to determine whether it is a valuable right of which he cannot be deprived and in which the law will protect him. The privilege and capacity to exercise a right, though unexercised, is a thing of value—is property—of which one cannot be despoiled. If a man has a right to his own image as made to appear by his picture, it cannot be appropriated by another against his consent. It must strike the most obtuse that a claim of exclusive right to one's picture is a just claim. Judge GRAY, in his dissenting opinion in Roberson v. Rochester Folding Box Co., supra, said, at page 563 of the report, that: "The proposition is,

Munden v. Harris.

to me, an inconceivable one that these defendants may, unauthorizedly, use the likeness of this young woman upon their advertisement, as a method of attracting widespread public attention to their wares, and that she must submit to the mortifying notoriety, without right to invoke the exercise of the preventive power of a court of equity."

One may have peculiarity of appearance, and if it is to be made a matter of merchandise, why should it not be for his benefit? It is a right which he may wish to exercise for his *own* profit and why may he not restrain another who is using it for gain? If there is value in it, sufficient to excite the cupidity of another, why is it not the property of him who gives it the value and from whom the value springs?

It may be admitted that the right of privacy is an intangible right; but so are numerous others which no one would think of denying to be legal rights which would be protected by the courts. It is spoken of as a new right, when, in fact, it is an old right with a new name. Life, liberty and the pursuit of happiness, are rights of all men. The right to life includes the pursuit of happiness, for it is well said that the right to life includes the right to enjoy life. Every one has the privilege of following that mode of life, if it will not interfere with others, which will bring to him the most contentment and happiness. He may adopt that of privacy, or, if he likes, of entire seclusion. The face of the majority opinion in Roberson v. Rochester Folding Box Co., supra, while denominating the right of privacy as "a phrase" and "a so-called right," yet concedes that it is a something which to disturb is an "impertinence". The court recognizes the right, but, as has been already said, not considering it a property right, refused it the protection of the restraining power of a court of equity; and thereby confined the beneficent power of equity within too narrow bounds—bounds so limited as will permit the doing of acts which shock the moral sense.

Munden v. Harris.

We therefore conclude that one has an exclusive right to his picture, on the score of its being a property right of material profit. We also consider it to be a property right of value in that it is one of the modes of securing to a person the enjoyment of life and the exercise of liberty; and that novelty of the claim is no objection to relief. If this right is, in either respect, invaded, he may have his remedy, either by restraint in equity, or damages in an action at law. If there are special damages, they may be stated and recovered; but such character of damages is not necessary to the action, since general damages may be recovered without a showing of specific loss; and if the element of malice appears, as that term is known to the law, exemplary damages may be recovered.

It ought, however, to be added that though a picture is property, its owner, of course, may consent to its being used by others. This consent may be express, or it may be shown by acts which would be inconsistent with the claim of exclusive use, as if one should become a man engaged in public affairs, or who by a course of conduct, has excited public interest. And it ought also to be understood that the right of privacy does not extend so far as to subvert those rights which spring from social conditions, including business relations. By becoming a member of society one surrenders those natural rights which are incompatible with social conditions. In the nature of things, man in the social organization must be referred to and spoken of by others, and this may be done freely so long as it is free from slander. But the difference between that right and a claim to take another's picture against his consent, or to make merchandise of it, or to exhibit it, is too wide for hesitation in condemning the act and granting proper relief.

The foregoing views find ample support in thoroughly considered cases decided in recent years. [Pavesich v. New Eng. Life Ins. Co., 122 Ga. 190; Vander-

bilt v. Mitchell, 71 N. J. Eq. 632; Edison v. Edison Mfg. Co., 73 N. J. Eq. 136; Foster-Milburn Co. v. Chinn, 134 Ky. 424.] These cases are supported by the dissenting opinion of Judge Gray, writing for the minority of the court, in Roberson v. Rochester Folding Box Co., supra. And we think the principle they announce is practically conceded in Schuyler v. Curtis, 147 N. Y. 434, hereinbefore cited. Several of these cases make acknowledgment to a very able article in 4 Harvard Law Review, 193.

In the Schuyler case a near relative of the deceased, Mrs. Schuyler, sought to enjoin admirers of her many virtues and good deeds from placing her statue in a public place. It was held that relief could not be had on the ground of the deceased's right of privacy, as that right necessarily died with her. And that so long as no aspersion was intended to be cast upon the dead; so long as the dead were intended to be honored in appropriate manner and not slurred or defamed in such way as to outrage the feelings and sensibilities of surviving relatives, there could be no cause of complaint by them. That the alleged injury, in that case, to the sensibility of relatives was fanciful rather than real, and it was therefore not a subject for interference by the courts.

We will now consider whether a cause of action for libel is stated in the second count. Our statute (sec. 4818, R. S. 1909) declares a libel upon a person to be a thing "made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath, or expose him to public hatred, contempt or ridicule . . . ." The printed matter set forth in the petition is the utterance of falsehoods, of a character tending to incite ridicule.

It was argued that the printed matter published consisted of purported utterances of plaintiff which were falsehoods and that to charge one in writing with being a falsifier was libelous *per se*. We are not inclin-

ed to base our decision on that ground, since we believe the statement purporting to have been made by plaintiff was palpably not intended to be understood, and would not be taken to be a false statement of fact, but rather as an imaginary statement attributed to him by defendants for purposes of advertisement of their goods.

But it seems to us clear that considering the publication of the picture and the printed matter, as a whole, it would expose plaintiff to ridicule and contempt unless his age (to which we will presently refer) would exempt him. It is a public statement of what plaintiff had said about the private affairs of his father in relation to a present for his mother, and is a reference to the private social affairs of his sister. Connecting these statements with his picture and using them as an advertising aid to business was necessarily bound to cause him to undergo the vexation and humiliation of ridicule though it was not believed he had really made the statements. It does not require any imagination to realize what a suggestive handle it would give to the teasing propensities of his fellows, to be used by them without stint and without regard to his distress. What right had these defendants to thus wrong him? It would be a matter of regret if the law did not afford him a remedy and such an one as would probably prevent repetition. The extreme to which Judge Parker went on the right of privacy in Roberson v. Rochester Fŏlding Box Co. did not lead him to say that a party was altogether without remedy. At pages 556 and 557 of the report he concedes that libel could be maintained.

But we are not left to a mere concession. The case of Pavesich v. New Eng. Life Ins. Co., supra, like that at bar, was instituted by petition in two counts, one for damages for an invasion of the right of privacy by publishng the plaintiff's picture in connection with an advertisement wherein he was said to have uttered language in advancement of the business advertised, and the other for libel. The opinion of Justice COBB is not

only an able and exhaustive consideration of the remedy in equity for restraint and at law in damages, for an invasion of the right of privacy, but it includes a distinct and separate affirmation of the right to maintain libel; and that in a case of the kind we have now before us the matter was such that if found by a jury to be untrue, would have been libelous *per se* and no special damages need be alleged. So it was determined by the Supreme Court of the United States, that the publication of a woman's picture in connection with an advertisement of whiskey was a libel which might work serious harm to her standing with some portions of the community. [Peck v. Tribune Co., 214 U. S. 185, overruling the same case in 154 Fed. Rep. 330.]

The plaintiff is an infant only five years old, which fact brings a subject into the case deserving serious consideration.     Can an infant be slandered or libeled? The question is easily answered in the affirmative, yet the answer involves the further consideration whether it should not be qualified by way of exception.     It seems well settled that an infant is liable for his torts, among which are libel and slander.     [Fears v. Riley, 148 Mo. 49; Jennings v. Rundall, 8 T. R. 335; Starkie on Slander, sec. 347.]

But that statement cannot be accepted broadly. For malice and evil intent are necessary ingredients in these torts and therefore sometimes the age of the infant may become of the highest importance in determining his liability.     If he be of such immature and tender years that he cannot form malice or entertain conscious evil intention, he cannot be guilty of either libel or slander.     It would be a ridiculous statement to say that a prattling child, two or three years old, could slander or libel another.     It would be almost, if not quite, as ridiculous to say that an infant twenty years old could not entertain malice so as to be guilty of these wrongs. Where, then, is the line to be drawn?     We think the rule in criminal cases applies, for they and libel and

slander have malice for a common ingredient. *Doli incapax* finds place in the consideration of the question. An infant is not liable to an action of slander "until he is *doli capax* 'capable of mischief'—which, presumtively is not until he is fourteen years of age." [Tyler on Infancy, sec. 127; Newell on Slander and Libel, 370; Odgers Libel and Slander (star page) 353.] The rule at common law, in force in this state (State v. Tice, 90 Mo. 112) is that a child under seven years of age is *doli incapax*—incapable of committing a crime; and between that age and fourteen he may or may not be; over fourteen he is as an adult. And so if he is under seven he should be considered incapable of libel or slander. These wrongs are indictable in this, and many other countries, as state offenses, and it would be an inconsistency to be avoided, if possible, to say, as a matter of law, in one forum, that the child could be capable of the act, and in the other that he could not.

It is not inconsistent with, nor an objection to this view that a child of tender years may commit a trespass and be civilly liable for damages. *Doli capax* cuts no figure in that instance; for a trespass does not necessarily imply malice, or evil intention. So a boy under seven years, was held liable for breaking down shrubbery and destroying flowers. [Hutching v. Engle, 17 Wis. 237.] And Judge COWEN, in Hartfield v. Roper, 21 Wend. l. c. 621, cites a case where an infant only four years old was stated to be liable in trespass. But in such extreme instances it is conceded that punitive damages could not be had; this, on the ground that wantonness or malice could not be imputed.

Though in some degree allied to the point in discussion, it is not necessary for us to say at what tender age, arbitrarily fixed, an infant would not be liable for fraud, but manifestly there is a period of immaturity when he could not be guilty of wrongful deception. Clearly he should be of such years of discretion that such a wrong could be fairly charged to him. In Watts

v. Cresswell, 3 Eq. Cas. Abr. 515 (9 Vin. Abr. 415) it was said that "if an infant is old enough to contrive and carry out a fraud, he ought to make satisfaction for it." Which is but another mode of saying that unless he has sufficient years of discretion to invent and perpetrate a fraud, he could not be held to have committed one.

Though, as thus shown, a child of tender years be incapable of uttering a slander or publishing a libel, it does not follow that he may not be slandered or libeled. The two positions are not dependable upon one another. In some instances and in some stages of infancy, opprobrium could not affect a child. Much would depend upon the nature of the offensive imputation. If an infant at the breast of his mother was charged with being a thief, it probably would not be slander, since it is not possible for him to commit larceny, either in point of fact or point of law. But if such infant should be charged with being afflicted with a loathsome and permanent disease, or with a private and humiliating physical malformation, these are charges which could be true and furthermore, they are species of defamation which would grow and the harmful effect of which would increase with the passing of time, and we can see no reason why it would not be slander. It has been decided that the fact that an infant is too young for criminal responsibility will not bar him of his action against his traducer. [Stewart v. Howe, 17 Ill. 71.] By the statute of Illinois the common law criminal irresponsibility for crime was raised from seven to ten years in cases of larceny, and a girl of age between nine and ten was charged with being "a smart little thief." The defendant sought to escape liability on the ground that she could not commit the crime of theft. The judge delivering the opinion became heated and indignant and characterized the defendant as a "reputational infanticide", and said that he "would sooner

see the action abolished than to read out infancy from the pale of its protection."

The foregoing is sufficient for an understanding of our views in relation to plaintiff's liability to be wronged, or, if it may be so expressed, his capacity to be injured. In our opinion, notwithstanding he was but five years old, he was liable to the ridicule of his fellows. His susceptibility to vexation and humiliation was at hand and his appreciation of the outrage committed by defendants would grow in greater proportion than would the failure of memory in his associates.

It is well enough to add that a trial may disclose that plaintiff was less than five years old; and so much less as not to be the subject of ridicule, or contempt, or public hatred by any appreciable number of the community (Peck v. Tribune Co., supra.). If so, then, under the views we have expressed, he was not libelled. It may be that his years and his intelligence were such that to be subject of ridicule, contempt or hatred would be a matter over which persons would differ, in which event the question could not be withdrawn from a jury, but would be for their consideration as to the law and the fact, as is proper in libel.

The result of the foregoing consideration is to reverse the judgment and remand the cause for trial. All concur.