**PEAY v. CURTIS PUB. CO. et al.**

**Civil Action No. 958—48.**

District Court of the United States for the District of Columbia.

June 7, 1948.

Edmund L. Jones, of Washington, D. C., for defendants, for the motion.

Alvin L. Newmyer, Jr., of Washington, D. C., for plaintiff, opposed.

HOLTZOFF, Justice.

This is an action for libel brought by Muriel M. Peay, against the Curtis Publishing Company, the publishers of a magazine known as "The Saturday Evening Post." The offending material consists of an article published in The Saturday Evening Post entitled "Never Give a Passenger a Break." Its author is joined as a co-defendant. The article is a satire on taxicab drivers in Washington, D. C. Its substance is more fully summarized in the opinion of this Court filed herewith in the companion case of Fowler v. Curtis Publishing Co., D. C., 78 F.Supp. 303.

The defendants move to dismiss the complaint for insufficiency. As pointed out in the opinion in the companion case, no action on account of a libel against an entire class may be maintained by an individual member of the group. In other words, a class libel does not give rise to a cause of action for defamation. Either the defamatory publication must be so phrased as to be applicable to every individual member of the group—and this is not the case here—or the plaintiff must be sufficiently identified in the article as the person, or one of the persons, to whom the article refers, in order to justify an award of damages.

The plaintiff alleges that she is an operator of a taxicab and, therefore, is a member of the class to which the publication refers. Her photograph is one of the illustrations forming a part of the article. She claims that by the insertion of her photograph in the offending publication, she is identified as a person against whom the libel is directed and, therefore, is entitled to seek redress.

While the plaintiff must be identified as the person to whom the derogatory statements relate, the identification may be made in any one of various ways. It is not necessary that the plaintiff's name be mentioned in the text. The publication of a photograph or a portrait of the plaintiff as part of the libelous material may be such an identification.

In Peck v. Tribune Co., 214 U.S. 185, 29 S.Ct. 554, 53 L.Ed. 960, 16 Ann.Cas. 1075, the Supreme Court held that the insertion of the plaintiff's picture in the libelous publication may justify an inference that the publication was concerning him.

In Jackson v. Consumer Publications, Inc., 256 App.Div. 708, 11 N.Y.S.2d 462, the

defendant published an article derogatory to auctioneers and imputing dishonesty to them as a class. The article was illustrated by a picture of the plaintiff purporting to conduct an auction sale, but his name was not mentioned in the text. The Court held that a question for the jury was presented as to whether the article was concerning the plaintiff, in view of the fact that it was illustrated by his portrait.

In the instant case it is for the jury to determine whether the man in the street in reading the story and seeing its illustrations, would be justified in inferring that the text of the article applied to the plaintiff, in the light of the fact that her photograph was one of the illustrations. The Court is of the opinion that there is substantial evidence which would justify the jury in drawing such an inference.

In view of these considerations, the first count of the complaint, which attempts to set forth a claim for damages for libel, is sufficient.

The second count of the complaint sets forth a claim based on an alleged violation of the right of privacy.

The right of privacy has been broadly described as the right to be let alone. Its particular application here involved is the privilege of preventing the unauthorized publication of one's portrait or photograph. Does such a legal right exist?[1] This question is open in the District of Columbia, as it has not been authoritatively answered by the United States Court of Appeals, Elmhurst v. Pearson, 80 U.S.App.D.C. 372, 153 F.2d 467. About twenty years ago, however, an eminent member of this Court, Mr. Justice Siddons, in an extremely well considered opinion, recognized and vindicated the right of privacy, Peed v. Washington Times Co., 55 Wash.L.R. 182. While his views are not controlling, they are, nevertheless, exceedingly persuasive.

This subject first came before a court of last resort for decision in 1902, when the Court of Appeals of New York, by a vote of four to three, rejected the concept of privacy as a legal right and decided that a person whose likeness was used in connection with an advertisement was without redress, Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 N.E. 442, 59 L.R.A. 478, 89 Am.St.Rep. 828. The State Legislature, however, promptly filled this gap in the law and provided a remedy, Sec. 50, Civil Rights Law, Consolidated Laws of New York, c. 6. Moreover, the dissenting opinion in the Roberson case has made a greater impress on jurisprudence than the views of the majority.

In 1904, the Supreme Court of Georgia in Pavesich v. New England Life Insurance Co., 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101, 106 Am.St.Rep. 104, 2 Ann.Cas. 561, unanimously ruled in an elaborate and exhaustive opinion that the right of privacy was a legal right entitled to judicial protection. The Georgia Court deliberately weighed and considered the Roberson case, supra, and expressed a strong preference for the minority opinion. As the Pavesich case is the leading decision on this point and gave rise to a long line of authorities, it seems appropriate and helpful to quote some significant extracts from this opinion (at pages 194, 201, 202 of 122 Ga., at pages 69 of 50 S.E.):

"The right of privacy has its foundation in the instincts of nature. It is recognized intuitively, consciousness being the witness that can be called to establish its existence. Any person whose intellect is in a normal condition recognizes at once that as to each individual member of society there are matters private, and there are matters public so far as the individual is concerned. Each individual as instinctively resents any encroachment by the public upon his rights which are of a private nature as he does the withdrawal of those of his rights which are of a public nature. A right of privacy in matters purely private is therefore derived from natural law."

\* \* \* \* \* \*

"The liberty of privacy exists, has been recognized by the law, and is entitled to continual recognition.

\* \* \* \* \* \*

"It therefore follows from what has been said that a violation of the right of pri-

---

[1] See "The Right of Privacy" by Samuel D. Warner and Louis D. Brandeis, 4 Harvard Law Review 193.

vacy is a direct invasion of a legal right of the individual. It is a tort, and it is not necessary that special damages should have accrued from its violation in order to entitle the aggrieved party to recover."

New Jersey adopted the rule of the Pavesich case and recognized the right of privacy in 1907, Edison v. Edison Polyform Mfg. Co., 73 N.J.Eq. 136, 67 A. 392. Kentucky followed in 1909, Foster-Milburn Co. v. Chinn, 134 Ky. 424, 432, 120 S.W. 364, 34 L.R.A.,N.S., 1137, 135 Am.St.Rep. 417. The same action was taken by Missouri in 1910, Munden v. Harris, 153 Mo. App. 652, 134 S.W. 1076. In 1918, Kansas joined the procession, Kunz v. Allen, 102 Kan. 883, 172 P. 532, L.R.A.1918D, 1151. In 1931 this doctrine was adopted by California, Melvin v. Reid, 112 Cal.App. 285, 297 P. 91, Mau v. Rio Grande Oil Co., D.C., N.D.–Cal., 28 F.Supp. 845. The same action was taken by North Carolina in 1938, Flake v. Greensboro News Co., 212 N.C. 780, 195 S.E. 55. In 1941, Oregon likewise recognized the right of privacy, Hinish v. Meier & Frank Co., 166 Or. 482, 113 P.2d 438, 138 A.L.R. 1. Many of these cases expressly refer to both the Roberson and the Pavesich cases, supra, repudiating the former and adopting the latter.

In Munden v. Harris, supra, the Kansas City Court of Appeals summarized its views as follows (at page 660 of 153 Mo.App., at page 1079 of 134 S.W.):

"We therefore conclude that one has an exclusive right to his picture, on the score of its being a property right of material profit. We also consider it to be a property right of value, in that it is one of the modes of securing to a person the enjoyment of life and the exercise of liberty, and that novelty of the claim is no objection to relief."

In Hinish v. Meier & Frank Co., supra, the Oregon Supreme Court enunciated this doctrine as follows (at pages 502, 503, 504 of 166 Or., at page 446 of 113 P.2d):

"But we deem it unnecessary to search for a right of property, or a contract, or a relation of confidence. The question is whether a right of privacy, distinct and of itself and not incidental to some other long recognized right, is to be accepted by the courts and a violation of the right held actionable. We are called upon, as Mr. Justice Holmes says somewhere, 'to exercise the sovereign prerogative of choice' between the view that the courts for want of a precedent are impotent to grant redress for injury resulting from conduct which universal opinion in a state of civilized society would unhesitatingly condemn as indecent and outrageous, and the view that the common law, with its capacity for growth and expansion and its adaptability to the needs and requirements of changing conditions, contains within itself the resources of principle upon which relief in such a case can be founded.

\*     \*     \*     \*     \*     \*

"Our consideration of the subject leads us to the conclusion that natural justice and the needs of the society in which we live should prevail over objections based upon the novelty of the asserted cause of action. It is time that fictions be abandoned and the real character of the injury be frankly avowed. When Brandeis and Warren wrote in 1890, it was the unseemly intrusions of a portion of the press into the privacy of the home that was emphasized as the main source of evil; since then motion pictures and the radio have been perfected and have taken their places among our great industries, while instantaneous photography today accomplishes miracles scarcely dreamed of fifty years ago. Thus, the potentialities for this character of wrong are now greatly multiplied. A decision against the right of privacy would be nothing less than an invitation to those so inclined who control these instrumentalities of communication, information and education, to put them to base uses, with complete immunity, and without regard to the hurt done to the sensibilities of individuals whose private affairs might be exploited, whether out of malice or for selfish purposes.

"We should not be deterred by fear of being accused of judicial legislation. Much of our law is judge-made, and there are those who think that it is the best law. Cardozo, 'The Growth of the Law', p. 133. The common law's capacity to discover and apply remedies for acknowledged wrongs without waiting on legislation is one of its cardinal virtues."

The majority of the cases to which reference has been made involve the unauthorized utilization of photographs or pictures of the plaintiff in connection with advertising matter. Several of the decisions, however, apply the same principle to different unsanctioned uses of names or portraits of private individuals. The only States that have considered and expressly repudiated the right of privacy are Rhode Island, Henry v. Cherry & Webb, 30 R.I. 13, 73 A. 97, 24 L.R.A.,N.S., 991, 136 Am. St.Rep. 928, 18 Ann.Cas. 1006; Washington, Hillman v. Star Publishing Co., 64 Wash. 691, 117 P. 594, 35 L.R.A.,N.S., 595; and Wisconsin, Judevine v. Benzies–Montanye Fuel & Warehouse Co., 222 Wis. 512, 525, 269 N.W. 295, 106 A.L.R. 1443.

The Restatement of the Law of Torts recognized the right of privacy as part of our jurisprudence and formulated it in the following words (Sec. 867, p. 398):

"A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other."

It has been said that the right of privacy was originally unknown at common law. This may well be true. It is a mistake to assume, however, that the common law became petrified and static and is no longer subject to modification except at the hands of the Legislature. An examination of the course of judicial decisions on numerous topics will demonstrate the contrary. The common law is always in a state of flux and is constantly molded and adjusted to meet changing conditions. This is the glory of the common law. The life of the law is found in its capacity to grow. Only a few days ago, it was observed by the Supreme Court that "'law' is not a static concept, but expands and develops as new problems arise," Price v. Johnston, 68 S.Ct. 1049, 1058. Of necessity, as was aptly remarked by Mr. Justice Holmes, "the law is behind the times." Major alterations in social and economic conditions must become crystalized before the law can meet the new needs. Modern life with its accompanying increase in public media of communication, such as newspapers, monthly and weekly magazines, moving pictures,

radio, and television, has created novel situations, that in turn gave rise to the problem of protecting the individual who desires seclusion and freedom from intrusion into his private life as well as from undue and undesirable publicity, such as is involved in the circulation of his likeness without his permission. Such an invasion is akin to a publication of private letters and memoranda, which the law forbids as an encroachment of a property interest.

■ The law has recognized the right of privacy. The publication of a photograph of a private person without his sanction is a violation of this right. An exception necessarily exists in respect to individuals who by reason of their position or achievements have become public characters, Elmhurst v. Pearson, 80 U.S.App.D.C. 372, 153 F.2d 467; Sidis v. F–R Pub. Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 15.

■ In the light of the foregoing discussion, the second count of the complaint states a sufficient claim for a violation of the right of privacy.

Motion to dismiss the complaint is denied.