W. Filmore HAITH, M.D., James S. Johnson, M.D., and Marion Richardson, M.D., Appellants,

v.

MODEL CITIES HEALTH CORPORATION OF KANSAS CITY, Missouri, Respondent.

No. WD 36901.

Missouri Court of Appeals, Western District.

Jan. 28, 1986.

Reggie C. Giffin, Leonard J. Johnson and David T. Holt (Morrison, Hecker, Curtis, Kuder & Parrish, of counsel), Kansas City, for appellants.

Lloyd S. Hellman and Blake Keating (Sandler, Balkin, Hellman & Weinstein, of counsel), B. William Jacob (Bagby, Jacob & Iliff, of counsel), Kansas City, for respondent.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

PRITCHARD, Judge.

■ Count I of plaintiffs' first amended petition is for breach of an employment contract entered into on December 16, 1974, whereby plaintiffs were to provide comprehensive obstretrical (sic) and gynecological services for defendant. The contract was terminated on December 15, 1976, effective January 15, 1977, by defendant by written notice. Paragraph 9 of the contract provides: "This agreement may be terminated at any time by the mutual consent of the Health Center and any one of the Physicians." The contract provided for other reasons (mentioned below) for termination, not here in issue, and Paragraph 9 wound up, "In the event of termination for other causes, compensation shall cease as of the date of termination." The trial court entered summary judgment against plaintiffs upon Count I upon the ground that *Paisley v. Lucas*, 346 Mo. 827, 143 S.W.2d 262 (1940); and *Superior Concrete Accessories, Inc. v. Kemper*, 284 S.W.2d 482 (Mo.1955), established that a written contract for services which does not contain a stated term shall, as a matter of law, be held to be terminable at will of either party upon reasonable notice.

In the *Paisley* case, supra, the basic issue was whether a successor insurance company, Missouri State, was empowered to cancel a contract relationship with plaintiffs. The original contract provided that the contract might be terminated by either party by notice in writing delivered to the other party at least 30 days before the date fixed for termination. An amendment of August 26, 1925, to the contract provided, " 'It is understood that said contract and supplements thereto will be continued in full force and effect and will not be cancelled or modified, *except by mutual agreement,* * * * or unless the Insurance Department of the State of Missouri by proper order requires and demands such modification, or cancellation.' " [Italics

added.] On September 26, 1928, the Insurance Department advised appellant and Missouri State that it ordered, required and demanded that the contract and all supplements be cancelled. Missouri State so advised appellant that it was compelled to and did cancel the contract relationship. The Supreme Court in affirming the trial court held, pages 270, 271, that the contract was not one for life; but it was for an indefinite period and could be terminated at the will of either party, quoting 32 C.J.S. 1061, § 136, which is (in part) " 'The agency may be terminated by the mutual consent of the parties, by operation of law, such as by the death of the agent; and if the agency contract fixes no date or time for its duration it may, as a general rule, be terminated at any time at the election of either party. (Citing other authority).' " Thus neither insurance company, International nor Missouri State were liable in damages to Paisley for breach of contract.

In the *Superior Concrete case*, supra, page 489, the contract provided that it "shall continue in effect thereafter until cancelled by mutual agreement." The contract had no fixed duration, either expressly or by implication. The court, following the general rule and the Paisley case, supra, held that contracts for an indefinite period of time may be terminated at the will of either party. Other later cases following the rule that unstated duration employment contracts are terminable at will are *Enyeart v. Shelter Mutual Insurance Co.*, 693 S.W.2d 120 (Mo.App.1985); and *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981).

■ Plaintiffs contend that the "at will" doctrine is inapplicable because the parties contractually limited or conditioned the reasons for which the contract could be terminated by (1) the mutual consent of the parties; (2) the death of one of the physicians; (3) for failure of one of the physicians to maintain licensure; (4) for behavior of one of the physicians disruptive to the Health Center; (5) for failure by the physicians to meet their professional responsibilities; or (6) for permanent disability of one of the physicians. None of these conditions occurred, and the argument ignores that the contract was for an indefinite period. Note that the provision for termination by mutual consent was in the contracts in both the *Paisley* and *Superior Concrete* cases, in which that provision was not held to be of consequence, since the contracts were for indefinite periods of time, and thus were terminable at will.

Plaintiffs cite and rely upon *Drzewiecki v. H & R Block, Inc.*, 24 Cal.App.3d 695, 101 Cal.Rptr. 169 (1972), but the facts there are inapposite to those here. In *Block*, the contract was entered into in 1959 and contemplated a long term relationship for the mutual benefit (profit) of both the employer and employee as manager of the Stockton and Fresno offices. At the outset, Mr. Richard Bloch told the employee that in the first year the operation would probably lose business, in the second year it might break even, and should start making a profit in the third year. He also told the employee that they would be " 'like partners' ", that the business was his and he could " 'sell it, trade it' " or " 'do with it' " as he pleased. The employee entered into his managerial duties, and substantially increased the number of branch offices managed by him, with definite profits. In 1967, Block decided it was paying its 250 branch managers excessively, and proposed new contracts substantially reducing managers' share of net profits for future growth, which the employee refused to sign. The original contract provided that a 90 day notice of termination could only be given in case of the employee improperly conducting the business, which was obviously not the fact. At page 173[1], the Block court adhered to the general rule "that an employment contract purporting to establish a permanent employer-employee relationship through the use of oblique language is terminable at the will of either party unless it is based upon some consideration other than the employee's services. (Citing cases.)" In affirming the judgment for the employee, the court held, at page 175, that the contract was designed to accomplish a special purpose and that its

duration was to be for so long as the employee competently conducted the employer's business, and it could not be terminated by Block except for cause. No such condition is in the contract in the present case, and therefore it must be held that the trial court did not err in entering summary judgment against plaintiffs on Count I.

Count II of plaintiffs' first amended petition states a claim under the law of privacy for appropriation of their names. It is pleaded that after the notice of termination of December 15, 1976, defendant, in preparing its "Continuation Grant Application" for the fiscal year May, 1977 to May, 1978, acting through its project director, E. Frank Ellis, assured and certified to the Federal Government that plaintiffs would be employed by defendant for that budget period at a total annual salary rate of $94,-506.00, well knowing that plaintiffs would not be employed by defendant for that fiscal year. According to the briefs, the "Continuation Grant Application" was made about two weeks after plaintiffs were terminated. It is said that the application is contained in a supplemental legal file, but that document has not been filed with this court.

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts, § 652C (1977). See also W. Prosser, Handbook of the Law of Torts, § 117, p. 804–814 (4th Ed.1971), setting forth the four generally recognized tort actions for the invasion of privacy: "(1) intrusion; (2) public disclosure of private facts; (3) false light; and (4) appropriation of another's name or likeness." It is the fourth category which is the basis of plaintiffs' claim. See the excellent article, "Privacy", William L. Prosser, 48 California Law Review 383 (1960), tracing the history of the tort action, and discussing at page 401, the category of "Appropriation", and stating, page 403, "It is the plaintiff's name as a symbol of his identity that is involved here, and not his name as a mere name. * * * It is when he [defendant] makes use of the name to pirate the plaintiff's identity for some ad-

vantage of his own, as by impersonation to obtain credit or secret information, * * *." [Brackets added.]

This state early recognized the tort action for invasion of privacy in *Munden v. Harris,* 153 Mo.App. 652, 134 S.W. 1076 (1911). There the court held that such a claim was stated in the petition that defendants used and published the picture of the five year old plaintiff without his consent for advertising their business of selling merchandise, saying, page 1079, "We therefore conclude that one has an exclusive right to his picture, on the score of its being a property right of material profit. We also consider it to be a property right of value, in that it is one of the modes of securing to a person the enjoyment of life and the exercise of liberty, and that novelty of the claim is no objection to relief. If this right is, in either respect, invaded, he may have his remedy, either by restraint in equity or damages in an action at law. If there are special damages, they may be stated and recovered; but such character of damage is not necessary to the action, since general damages may be recovered without a showing of specific loss; and if the element of malice appears, as that term is known to the law, exemplary damages may be recovered."

In *Alonso v. Parfet, et al.,* 171 Ga.App. 74, 318 S.E.2d 696, 698 (1984), where defendants used plaintiff's doctor's name in their publications after he was terminated as their director, the court said, "However, in addition to and independent of the right of privacy, this case deals with a man's rights in the publicity value of his name, i.e., the right to grant exclusive privilege of using his name." The *Alonso* case was reversed in 253 Ga.App. 749, 325 S.E.2d 152, 154 (1985), upon the ground that "The evidence establishes a question of fact as to whether appellees halted the use of appellant's name within a reasonable time after his dismissal.", an issue not present on this appeal.

Defendant says that mention of plaintiffs' names in the grant application consti-

tuted an incidental business use and therefore was not a commercial appropriation. It argues that the *Munden* case, supra, indicated that it would follow the New York decisions which are based upon a statute there which limits appropriation actions to use for advertising and trade. The argument ignores that a jury could find that there was an *advantage* to defendant in using plaintiffs' names to procure a government grant, within the fourth category of privacy actions mentioned by Prosser, supra.

■ It is also argued by defendant, citing *Beane v. McMullen*, 265 Md. 585, 291 A.2d 37, 46 (1972), that one's privacy is not invaded by reports only to government officials and not to the press, to neighbors or social friends. The *Beane* case did not involve a name appropriation, but only requests to public authorities to investigate possible violations of zoning and other county laws. There was no personal advantage to the McMullens, and the court held that there was no evidence that McMullens' complaints were unreasonable or unjustified. It is also argued that plaintiffs as doctors and employees of defendants' clinics, were voluntarily operating within a public context, and defendant did not therefore invade their private lives— their names cannot be construed as "private", nor as being appropriated in a tortious manner. Cited for the proposition that plaintiffs were public figures is *Rinsley v. Brandt*, 446 F.Supp. 850 (D.Kan. 1977). In that case plaintiff, as Director of the Children's Section at Topeka State Hospital and Associate Clinical Professor of Psychiatry at K.U. School of Medicine, and having worked exclusively at public medical institutions, was a public official or figure who was required to show actual malice in his action for invasion of privacy by placing him before the public in a false light under *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The court applied the definition of "public official" set forth in *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966), "It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierachy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." Certainly plaintiffs here were not government employees, and there is nothing to indicate that they had any responsibility for or control over the conduct of governmental affairs. The *Rinsley* case, although holding at pages 857 and 858 that a public official has no right of privacy as to the manner in which he conducts his office, and could not be allowed to shelter his work completely from public scrutiny, did hold that plaintiff had the right to be protected from any falsehoods that accompany public scrutiny. The *Rinsley* case is not in point and cannot be a bar to plaintiffs' action.

Plaintiffs say in their brief that the appropriation of their names is a cause of action also referred to as the "right of publicity", citing Nimmer, The Right of Publicity, 19 Law and Contemp.Probs. 203 at 216 (1954). Plaintiffs do not claim to be celebrities having a right to publicity in the exclusive use of their names, as originated in *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953). The cause of action for use of a celebrity's name differs at least in the rules for measure of damages—value of the use by defendant of a celebrity's name as against the measure of the injury to plaintiff in privacy actions. Besides, the Munden case holds that private, ordinary citizens have a cause of action in privacy for the appropriation of their names or likenesses. "Right of Publicity" in the sense used by a celebrity has nothing to do with this case.

■ Defendant seems to argue further in support of the grant of summary judgment on Count JI that a person of reasonable sensibilities would not react by way of humiliation. Cited is *Williams v. KCMO Broadcasting Div.-Meredith Corp.*, 472 S.W.2d 1 (Mo.App.1971). That case involved the television publication of plaintiff's arrest, held to be an authorized re-

porting of a newsworthy event, not presented indecently, and thus held to be not actionable. The court's remark at page 4 that there must be shown that publication shows a " 'serious, unreasonable, unwarranted and offensive invasion of private affairs' ", is dicta—it refers to the evidence, a fact question for the jury. Whether plaintiffs were humiliated, or otherwise damaged, by the appropriation of their names is a question of fact for the jury.

■ Defendant lastly contends that plaintiffs' case must fail because there was no evidence of medically significant mental health problems caused to them. It bases that contention on plaintiffs' answers to interrogatories that no physician was consulted, and no monetary expense was incurred. Those answers were at the discovery stage of the proceedings, and whether there existed medically diagnosable distress or mental injury might be established, under *Bass v. Nooney, Co.*, 646 S.W.2d 765, 772 (Mo. banc 1983), at trial. In any event, plaintiffs' recovery of damages (even nominal damages), should the jury find that they are entitled to recovery for appropriation of their names, is for that trier of the fact.

There exists genuine issues of fact as to whether defendant wrongfully appropriated plaintiffs' names to its advantage, and if so, the matter of damages therefor, and the Court erred in entering summary judgment on Count II.

The summary judgment on Count I is affirmed. The summary judgment on Count II is reversed and the case is remanded for further proceedings.

All concur.