MONDON *v.* THE WESTERN UNION TELEGRAPH COMPANY.

1. Upon the assumption that all of the evidence introduced by the plaintiff was legally admitted, he was entitled to a recovery; but according to the principles announced by this court in *Magarahan* v. *Wright & Lamkin*, 83 *Ga.* 773, and *Baldwin* v. *Western Union Tel. Co.*, 93 *Ga.* 692, the verdict rendered was too large; for even if the offer of employment made to the plaintiff contemplated a longer term of service than one month, how much longer such term was to be, or would have been, had the contract of employment been completed, is, under the evidence, too indefinite and uncertain to render the plaintiff's loss of time for a greater period than one month a basis for damages.
2. In the trial of an action against a telegraph company for damages

alleged to have been occasioned by its negligence in the transmission and delivery of a message accepting an offer of employment, it was not competent for the plaintiff to prove declarations of the person making the offer, to the effect that the plaintiff would have been employed if his message had been duly received, or that he lost the situation tendered him because of delay in the delivery of the message, these declarations having been made after the situation in question had been in fact given to another.

3. For the reasons above indicated, the court was right in granting a new trial.

July 29, 1895.

Action for damages. Before Judge TURNBULL. City court of Floyd county. September term, 1894.

Mondon sued the telegraph company, and obtained a verdict. A new trial was granted on defendant's motion, which judgment was affirmed. 94 *Ga.* 716. On September 12, 1894, plaintiff obtained a verdict for $359 principal, and $75.18 interest from July 18, 1891, and entered up judgment for $434.18 and costs. Defendant's motion for new trial was again sustained, and plaintiff excepted.

Plaintiff's claim was, in brief, as follows: On and before September 15, 1890, he was in the service of the C., R. & C. Railroad Co., at a salary of $45 a month. On that day he received a letter from J. S. Hartin, then the supervisor of the B. B. & B. R. R., at Montevallo, Ala., stating: "If you think you can stand the examination on time card, come down and run my work-train for me. Come to Montevallo, and bring all the good men you can get at $1.25 per day. Let me know at once what you will do. I want some one now. Will pay work-train cond'r $90 per month. Write or come at once." Plaintiff received this letter about four o'clock in the afternoon. He exhibited it to the superintendent of the C., R. & C. R. R., and tendered his resignation of the position he held. He was anxious to get the job tendered him by Hartin, but being undecided whether to go on at once or wait and try to get up some hands to work

on the construction-train as per request in the letter, he decided to telegraph Hartin; and on the next morning (Tuesday) about eight o'clock, he went to the telegraph office in Rome, and filed for transmission a message to Hartin, acknowledging receipt of the letter, and stating: "I can bring some men by waiting over a day or two; or must I come at once and leave the men?" He did not then have the money to pay for the message, but told the operator he would get it in an hour or two and pay him for the message and for the answer to the same. The operator said that was all right, and that he would send the message right along. About eleven o'clock the same morning, plaintiff went back to the office and paid the operator as promised, the operator telling him he had sent the message o. k. Several times during that day, plaintiff returned to the telegraph office and asked if any reply had come to his message, and was each time informed that none had come. In the meantime he was trying to get men to go with him, and did succeed in getting four. Failing to get any answer to his message by Wednesday morning, the 17th, he went to Montevallo with the men he had procured, reaching there about four o'clock in the afternoon. He saw Hartin that night, and told him he had come in response to his letter to take charge of the work-train. Hartin said he had not heard from plaintiff, and that the position had been filled; that he had not received the telegram, but if he had received it, plaintiff would have got the place he offered in the letter. This conversation occurred as soon as they met. Hartin gave no other reason for not accepting plaintiff's services, except the failure to receive the telegram. Plaintiff remained in Montevallo several days. Hartin had authority to employ a work-train conductor. The B. B. B. railroad was a new road, had been operated but a short time, and was a part of the East Tennessee system. The telegraph operator at Montevallo was also

the agent of the B. B. B. railroad and of the East Tenn. road at that point. Hartin lived about two hundred yards from the telegraph office, and was at home every day plaintiff was there. The telegram in question was delivered to him on the Saturday after plaintiff's arrival there on Wednesday. Plaintiff did not get the job. He had been in the railroad business for twenty years, and was well acquainted with the East Tenn. time-card. He did not stand the examination on the time-card, but could have done so if required. Hartin was well acquainted with him, and knew of his previous work as a railroad man. They had conversed about this job two weeks before the sending of the letter. Hartin was then in Rome, and hunted up plaintiff. He said they had a man running the work-train, whom they would have to get rid of, and he wanted plaintiff to have the job; that they had plenty of work to do, and it was a good job—$90 a month. Plaintiff was expecting to hear from him when the letter came. He knew plaintiff had a regular job, and how long he had worked·for the East Tenn. and C., R. & C. railroads. Plaintiff would not have given up his job on the C., R. & C. for a position on the B. B. B. road for only a month or a short time at $90 a month; he had a regular job at $45 a month, and would not have given it up for a temporary job at $90. Returning to Rome, he applied for his old position on the C., R. & C., but found it had been filled. He tried to get a position, but failed, and was entirely out of work until October 27, when he got a place on the Rome R. R. at $43, which was the best he could do. His salary was reduced, three months after, to $40, at which figure it remained until the filing of this suit on July 18, 1891.

The material grounds of the motion for new trial are: (1) Verdict contrary to law and evidence, and excessive. (2) Error in permitting plaintiff to testify, that on the night of his arrival at Montevallo, Hartin told him he

had not received the telegram and therefore he had given to another the place offered in the letter; defendant objecting that Hartin did not appear to have any such connection with the transaction in question as to warrant the giving in evidence of his declarations against defendant; that said declarations were not a part of the *res gestæ*, but were hearsay and narrative of a past transaction, and if relevant, should have been proved by Hartin himself.

McHENRY, NUNNALLY & NEEL, for plaintiff.

DORSEY, BREWSTER & HOWELL and WRIGHTS & HAMILTON, for defendant.

LUMPKIN, Justice.

The facts appear in the reporter's statement.

1. We will first look at the case upon the assumption that all of the evidence introduced by the plaintiff was legally admitted; and from this standpoint, we think it clear that he was entitled to a verdict against the defendant. The plaintiff's telegram, which the defendant negligently failed to duly transmit and deliver, was in reply to a letter which contained a distinct offer of employment; and we think, in view of the contents of that letter, that the plaintiff's message amounted to an acceptance of the employment offered. These two documents together, in connection with the extrinsic facts, constituted a contract binding upon the railroad company in Alabama to give the plaintiff employment in case he could "stand the examination on time-card," and binding the latter to accept such employment; and the testimony of the plaintiff to the effect that he could have stood the requisite examination being uncontradicted, we think the contract was legally complete.

The main evidence upon which the plaintiff relied for the purpose of showing that the defendant's negligence deprived him of the benefits he would have received from this contract, was hearsay; but conceding, for the

moment, that it was otherwise and .was properly admitted, a case for a recovery was substantially made out. The verdict, however, for several hundred dollars was too large.   The letter tendering employment to the plaintiff contained an offer to pay him $90.00 per month, but it specified no length of time during which the employment was to continue.   The contract, therefore, after the expiration of a month, could have been terminated at the will of either of the contracting parties. How, then, could damages for a greater period than one month be measured with any degree of certainty or accuracy?   If the engagement to employ the plaintiff had been for any stipulated period greater than one month, he would have had a right to recover damages accordingly, and they could have been definitely measured and assessed; but as it was, he was liable to be dismissed from his employment as soon as the first month expired, and therefore it could not be known what damages he sustained because of his loss of employment for any greater period than one month.   See Merrill *v.* W. U. Tel. Co., 78 Me. 97.   It was doubtless in the contemplation of the parties that the period of the plaintiff's employment would in fact extend beyond one month; but the point we stress is, that there was no contract under which he could, as a legal right, have demanded that he be retained in the service of the railroad company a single day after the month expired.   In the case just cited, which was one somewhat similar to the case at bar, the contract was that the plaintiff should labor for a manufacturer at $2.25 per day, but for no stipulated period; and the Supreme Court of Maine held that he could recover nominal damages only.   Referring to this case, Judge Thompson says:   "But, with due respect to this court, it would seem that the plaintiff was entitled to recover at least what he would have obtained for one day's work."   Thompson on Electricity, §326.

In this same section the author lays down the rule substantially as has been held by this court in *Baldwin* v. *W. U. Tel. Co.*, 93 *Ga.* 692. In that case there was an offer of employment at a specified compensation per month, and we held that, *prima facie*, such an offer of employment would cover the term of at least one month; but we quite agree with Judge Thompson that in such a case, beyond that period it is well to hold that everything was speculative or contingent. In *Magarahan* v. *Wright & Lamkin*, 83 *Ga.* 773, it was said, that where one is hired to serve another without any agreement as to the duration of service, there is no universal rule of law as to the length of time the hiring is to continue, but this question will be governed by the circumstances of each particular case. The English rule seems to be that a general hiring, or a hiring by the terms of which no time is fixed, is a hiring for a year. Wood's Master & Servant (2d ed.), §136. But that rule certainly is not universally applicable to all contracts of hiring in this country. We think the doctrine of the *Magarahan* case, *supra*, is better suited to the conditions prevailing here. Certainly there was not, in the present case, any evidence whatever that it was the custom of railroad companies to employ conductors by the year, nor was there any evidence from which it could be reasonably inferred that the railroad company would in any manner have been bound to have retained the plaintiff in its service for this length of time. We therefore think his recovery should have been upon the basis of a loss of one month's wages only.

2. As already remarked, the main evidence upon which the plaintiff relied for the purpose of showing that he lost the situation tendered him because of delay in the delivery of his message, was hearsay. This evidence consisted of proof of declarations made by the supervisor of the railroad company in Alabama, after

the situation tendered to the plaintiff had been actually given to another person, to the effect that the plaintiff would have been employed if his message had been duly received. As between the parties to the present controversy, this was hearsay only. Whether, in a controversy between the plaintiff and the railroad company arising upon this state of facts, this evidence would have been admissible as admissions of the company, is not now the question. If the declarations of the supervisor are admissions binding upon the company he represented, they would not be binding upon the telegraph company in any sense. The supervisor was a competent witness, and no reason was suggested why he was not called to testify to the facts sought to be established by his declarations to the plaintiff.

3. The court granted a new trial, which was right for at least two reasons: first, that the verdict was for an amount too large; and second, that the court erred in admitting illegal evidence.          *Judgment affirmed.*