### ODOM v. BUSH et al.

1. Properly construed, the contract declared on by the plaintiff was an agreement under which he was employed by the defendants, for an indefinite term, as superintendent of a proposed manufacturing plant, at a fixed salary per month from a specified date, with the option of becoming a shareholder in a joint-stock company in the name of which the enterprise was to be conducted.
2. Such a contract of employment, being indefinite as to its duration, is to be deemed a hiring for the term of one month only; and after the expiration of that period it was the right of the defendants to terminate the employment at will.
3. Under the allegations upon which the plaintiff relied for a recovery, there was no breach of the contract declared on.

Argued February 26,—Decided March 28, 1906.

Action on contract. Before Judge Little. Muscogee superior court. June 19, 1905.

*Wheeler Williams* and *Goetchius & Chappell,* for plaintiff.

*T. T. Miller,* for defendants.

EVANS, J. The plaintiff, W. G. Odom, brought a suit for damages for an alleged breach of a contract by the defendants, Joel Bush and Ben L. Clark, who were doing business under the firm name of the Georgia Coffin Company. According to the allegations of his petition, the defendants went to Newberry, S. C., where plaintiff was employed by the Carolina Manufacturing Company as superintendent of its factory, and solicited him to go to Columbus, Ga. (where they were to put up and establish a coffin factory), upon the following terms and conditions, to which he assented: (1) "Plaintiff was to be the superintendent thereof, at a salary of one hundred dollars per month, beginning March 16th, 1904;" (2) he was "to be also a stockholder in the joint-stock company, it being understood and agreed . . that plaintiff was to put in whatever money he could raise from the sale of his real estate in the City of Atlanta, Georgia, and from the sale of his stock in the Carolina Manufacturing Company;" and (3) the plaintiff, though entitled "to receive a salary of one hundred dollars per month as superintendent of the proposed factory, . . was to draw at the end of each month only what was required to meet the living expenses of himself and family, the balance of said salary to remain in the hands of the company until the end of the year, when stock would be issued to plaintiff to cover the same, or, at the option of

plaintiff, paid to him in cash." This proposition was made by the defendants and accepted by the plaintiff on March 14, 1904. He at once disposed of his household goods, selling the same at a great sacrifice, in order to be able to leave Newberry at such time as would permit him to reach Columbus at the time agreed upon for him to begin his duties as superintendent; gave up his position with the Carolina Manufacturing Company, from which he received a salary of seventy dollars a month, and on March 16 left Newberry for Columbus to assume the duties of his new position. At the instance and request of defendants, he stopped en route, in Atlanta, to arrange for the disposal of his real estate, under the terms of the agreement, it having been understood and agreed that he should do so and that his salary was to start from the day he left Newberry, S. C. He reported to defendants for duty on March 21. "Upon his arrival at Columbus, plaintiff was met by defendants in the manner and style of an associate in business, and was by them treated with such consideration as his position and his relation to them authorized, and he proceeded to carry out and perform the duties required of him by reason of his said engagement." He found that much repairing upon the factory buildings was needed, and, being interested in the success of the undertaking, he performed much labor and service in making the needed repairs, although it was no part of his duty as superintendent to do so. He also, acting in that capacity and upon the request of the defendants, procured the services of an expert machinist from the Carolina Manufacturing Company, selected and ordered material and machinery for the plant, located places for machinery, and otherwise arranged all the necessary preliminaries for the business. After he had performed these services, and after the defendants had obtained from him all the information necessary to the successful inauguration of the enterprise, they informed him that they had no further use for him. Plaintiff had been engaged in the coffin-manufacturing business for some twenty-five years, and it was because of his superior skill and knowledge of the business that the defendants sought him and secured his services. They knew absolutely nothing about the business, and relied entirely on him to select proper machinery and material for the plant, to see that the machinery was properly installed, and to do everything necessary for the suitable equipment and conduct of the plant. Acting upon

the faith and according to the terms of the contract, "plaintiff placed his Atlanta real estate on the market, and one place thereof has been sold at a great sacrifice in order to carry out his part of said contract, plaintiff losing thereby the sum of five hundred dollars." He brought with him to Columbus "tools and brushes, and it was agreed between him and defendants that they were to be taken, and they were so taken, by the firm at the sum and price of twenty-five dollars, and that this sum should go to plaintiff's credit in paying for stock in said company. Defendants are now in possession of said tools and brushes in accordance with said agreement. Plaintiff drew from said company seventy-five dollars of his first month's salary, the balance, twenty-five dollars, being now in the hands of the defendants, according to the terms of the agreement hereinbefore stated."

With respect to the breach of contract relied on for a recovery, the plaintiff alleged: His dismissal by the defendants from their service occurred on May 3, 1904, without fault or blame on his part and without just cause, the defendants having totally disregarded their contract and their duty to plaintiff, to his injury and damage in the sum of $5,000. Prior to the breaking of the contract by the defendants, he had done and performed all and every part thereof required of him by its terms up to that time, and was ready to do and perform every other part thereof, if permitted by them to do so; "but defendants have refused to allow plaintiff to further carry out his part of said contract, and have refused to have anything further to do with plaintiff, and have forbidden him to have anything to do with or about the said enterprise in which they had embarked. If defendants had not broken said contract, as aforesaid, said enterprise would have resulted in large profits to plaintiff in addition to his said salary." The items of damages sought to be recovered were, (1) loss incurred in resigning the lucrative position he held in South Carolina, (2) loss resulting from the sale of his household goods at a great sacrifice, (3) like loss sustained in disposing of his Atlanta real estate, (4) expenses of moving from Newberry, S. C., to Columbus, Ga., (5) loss of opportunity of securing lucrative positions or forming other profitable business alliances, open to him at the time the contract was made, and expenses incurred in endeavoring to secure employment after its breach, and (6) loss of anticipated profits arising from the coffin-

factory venture, in addition to the salary he was to receive under the contract. The fact that the plaintiff was left stranded in "a strange place and among strangers, . . without a home and without employment," was also stressed as a reason why he had been endamaged in the sum of $5,000, though the specific amount claimed for leaving him in this situation was not stated, nor was any attempt made to estimate the amount of his loss of the anticipated profits of the business. ⌐The plaintiff did not seek to recover any damages for loss of salary for the intervening time between the date of his dismissal, May 3, and the date of the institution of the suit, May 14, 1904, or for any other given period. Nor did he pray for the recovery of the balance of the salary he had earned and which was in the hands of the defendants, nor ask for any accounting for the tools and brushes he had turned over to them.⌐

The defendants demurred to the petition, on the general ground that no cause of action was therein set forth, because the plaintiff did not allege any act on the part of the defendants upon which he could base any recovery of damages, and also upon divers special grounds which called into question his right to claim the specific items of damage stated. The court sustained all of these grounds of the demurrer and dismissed the petition. Exception is taken by the plaintiff to the judgment rendered.

1. The theory upon which counsel for the plaintiff drafted his petition evidently was that his dismissal from service without cause was a breach of covenant which amounted to a practical repudiation by the defendants of the entire contract, relieved him from the duty of further performing or offering to perform any of his obligations thereunder, and gave him the right to immediately institute suit to recover for all damages which might flow directly or indirectly from the non-performance of the contract by the defendants. The importance of properly construing the contract declared on is therefore apparent. It has three distinct stipulations affecting the rights of the plaintiff thereunder: first, his salary is definitely fixed at "one hundred dollars per month, beginning March 16th, 1904," though no definite term of service was agreed on; second, he was to be a stockholder in a "joint-stock company," the understanding of the contracting parties being that he was "to put in whatever money he could raise" from a sale of his real estate in Atlanta and certain stock of the Carolina Manufacturing Company

which belonged to him; but the parties did not arrive at any definite agreement as to the precise amount of money he was to invest in the proposed venture, or as to the time within which he was to raise the funds and make the investment in stock; third, it was his privilege, at the close of the current year (1904), to elect whether he would demand payment in cash of such part of his salary (if any) as he had not drawn for living expenses, or receive payment in stock of the company (formed or to be formed), covering the amount of the unpaid balance of his salary then remaining in the hands of the defendants. It is obvious that, under this arrangement, he was not to become a partner in the firm of which the defendants were members. *Dawson National Bank* v. *Ward,* 120 *Ga.* 861, and cit. On the contrary, as he clearly says, he was to be the superintendent of the coffin factory (in the employ of either the defendants or "the joint-stock company"), and was, moreover, to become a stockholder in the enterprise. (It is not stated, nor is it material, whether "the joint-stock company" was to be an unincorporated association of which he was to become a member, or a duly chartered company organized for the purpose of conducting the proposed business.) If the contract had been fully carried into effect as contemplated by the parties, the plaintiff would have sustained towards the defendants (or "the joint-stock company") the dual relation of employee and stockholder, but no other relation. The covenant to the effect that the plaintiff was "to put in whatever money he could raise from the sale of his real estate," etc., amounted to nothing more than an option given to him by the defendants to take stock in "the joint stock company," for an agreement so loose and indefinite in its terms would be incapable of enforcement at the instance of the defendants. *Hart* v. *Ga. R. Co.,* 101 *Ga.* 188; *Ragan* v. *Smith,* 108 *Ga.* 664-5; *Sedgwick* v. *Gerding,* 55 *Ga.* 264. "The rule as to certainty is, that the agreement must be so certain and complete that each party may have an action upon it." *Jernigan* v. *Wimberly,* 1 *Ga.* 220. It would be absurd to hold that the defendants could legally have called upon the plaintiff to sell his Atlanta real estate at a sacrifice of $500, as he voluntarily chose to do. The privilege of being paid his salary partly in stock was, as the contract expressly provides, also a mere option given him. So that the inducement held out by the defendants to the plaintiff, and the proposition which he accepted, was that he should

enter into their service simply as an employee, at a salary of $100 per month, with the privilege or option of taking stock in "the joint-stock company" for such an amount as he might be able to realize from the sale of certain property owned by him, supplemented by such sum as he might save out of his salary up to a specified time.

2. The parties to the contract doubtless entertained the hope and expectation that it would be to the mutual advantage of all concerned that the plaintiff should continue indefinitely to discharge the duties of superintendent of the factory, invest his money in the venture, and co-operate with the defendants in their efforts to make it a financial success. ⌐But the fact remains that the defendants did not bind themselves to employ the plaintiff, nor did he obligate himself to remain in their service, for any definite period beyond the first month of hiring⌐ *Mondon* v. *W. U. Tel. Co.,* 96 *Ga.* 504. An executory contract of service for no fixed period of time is obviously too indefinite to be capable of enforcement; and ⌐it is only by a fiction that the courts are enabled to hold that an engagement at a fixed salary per month, but with no stipulation as to its duration, is a legally binding contract for one month's employment at the agreed wage, upon the supposition that the contracting parties had in contemplation a definite hiring for one month only, either party to then have the right of regarding the engagement as at an end or of treating the contract as continuing of force upon the same terms as to wages till notice was received from the other of his election to terminate the relation of master and servant.⌐ The employee is entitled, under such circumstances, to notice of dismissal. *Marietta R. Co.* v. *Hilburn,* 75 *Ga.* 379. But the hiring, after the expiration of the first month, being indefinite as to its duration, may be terminated at the will of either party. Civil Code, §2614; *Mondon* v. *Tel. Co.,* supra. Where the contract of hiring is made with reference to a general custom or business usage, which enters into and becomes a part of the agreement, the contract is not, of course, indefinite as to its duration if such custom or usage fixes the term of the engagement. *Beck* v. *Thompson,* 108 *Ga.* 244; *Hobbs* v. *Davis,* 30 *Ga.* 423. But an "offer of employment at so much per month will, in the absence of anything further indicating the period of employment intended, be treated as meaning employment for a term of one month." *Baldwin* v. *W. U. Tel. Co.,* 93

*Ga.* 695. This rule of construction was first applied in *Magarahan* v. *Wright,* 83 *Ga.* 773, 779, from the decision in which case the section of the code above cited was framed. The law applicable in cases of this kind now is: "That wages are payable at a stipulated period raises the presumption that the hiring is for such period; but if anything in the contract shows that the hiring was for a longer term, the mere reservation of wages for a lesser time will not control. An indefinite hiring may be terminated at will by either party." ·Civil Code, §2614. The plaintiff in the present case does not pretend that he was hired for one year, or for any other definite period of time. The circumstances indicate that the parties really contemplated an arrangement whereby the plaintiff would have, in common with the defendants, a personal interest in promoting the business enterprise, and would continue to perform the part assigned to him so long as the parties could work in harmony to that end, though it might be years before the fruition of their hopes was realized in full by assured success. At the same time, we are not at liberty to arbitrarily hold that the defendants impliedly bound themselves to employ the plaintiff as superintendent of the factory so long as they might operate it. On the other hand, nothing in the contract suggests a hiring for one year only, or up to the end of the current year, 1904. Then it was that the defendants obligated .themselves to settle with the plaintiff for such portion of his salary as he may have earned but had not drawn. However, this stipulation does not warrant the inference that the plaintiff was employed for a definite period of precisely nine months and sixteen days, and that the parties contemplated that his term of service should include and end with the last day of December, 1904. His construction of the contract negatives any such idea, and he does not claim that any specific time was agreed on for the termination of his employment.

3. From what has been said above, the conclusion is irresistible that the defendants committed no breach of the contract by notifying the plaintiff, on May 3, that his services were no longer needed; and it follows that the mere fact that he was on that date dismissed gave him no right to recover even nominal damages, much less to enforce his demand for the assessment of the special damages claimed. There is in the plaintiff's petition no hint that the defendants have declined to comply with the covenant to permit him

to invest his money in the venture, or have in any other manner failed to meet their obligations towards him in his capacity of prospective stockholder. He has never acquired any interest in the business as a partner, nor, so far as appears, as a stockholder. Accordingly, he had, after his dismissal as superintendent of the factory, no right to intermeddle with either the physical or financial affairs of the concern, and the defendants did not subject themselves to a suit for damages when they "refused to have anything further to do with plaintiff" after his dismissal, and forbade "him to have anything to do with or about the said enterprise in which they had embarked." The time for demanding payment of the $25 in their hands, the balance of his salary for his first month's work, had not arrived when suit was brought, and he makes no demand for premature payment. He could not, in a suit for damages, treat the contract as rescinded in so far as the agreement touching his tools and brushes was concerned, and demand an accounting therefor. *Harden* v. *Lang,* 110 *Ga.* 392; *Timmerman* v. *Stanley,* 123 *Ga.* 850(2). We do not understand that he attempted to do so, though he did insert in his petition wholly irrelevant allegations concerning the sale of his tools and brushes and respecting divers other matters in no way connected with his supposed cause of complaint, viz., his summary dismissal from service. As the plaintiff signally failed to show any breach by the defendants of their contract obligations, his petition was rightly dismissed on general demurrer, irrespective of the merits of the various special grounds of objection which were interposed by them touching his right to recover the items of damages claimed.

*Judgment affirmed. All the Justices concur.*