### 57748. BUCHANAN v. FOXFIRE FUND, INC.

Shulman, Judge.

Appellant-Buchanan, a former employee of appellee-Foxfire Fund, Inc., filed suit seeking contract and tort damages allegedly attributable to appellee's wrongful termination of an employment contract and tortious conduct following the termination. This appeal is from the grant of summary judgment in favor of Foxfire Fund as to two of three counts of appellant's amended complaint. We affirm.

1. Count 1 of appellant's complaint sets forth a claim for breach of an alleged lifetime employment contract. In granting summary judgment as to Count 1, the trial court held that the employment contract was terminable at will. We agree with the trial court's holding.

The employment contract forming the basis of appellant's claim provides in pertinent part as follows:

"1. . .This job. . .will carry with it a regular monthly salary. . .

"2. . .[S]ince [appellant's] duties demand that he be at the Center [a historical mountain village restoration project owned by appellee] on a full-time basis, [appellant and his wife shall] be allowed to move into the caretaker's house and live there on a permanent basis. . ."

Although the contract provides for a monthly salary

and contemplates employment on a full-time basis, the contract does not contain any provision that would establish a lifetime employment period. See, e.g., *American Standard, Inc. v. Jessee,* 150 Ga. App. 663 (1979). The trial court properly determined that this contract was terminable at the will of either party and would not support a claim for wrongful termination. *Ely v. Stratoflex, Inc.,* 132 Ga. App. 569 (1) (208 SE2d 583). See generally *Ga. Power Co. v. Busbin,* 242 Ga. 612 (1) (250 SE2d 442); *Mondon v. Western Union Tel. Co.,* 96 Ga. 499, 504 (23 SE 853). That the contract reflects the parties' expectation that appellant would reside in the caretaker's house until his death will not supply definiteness to this otherwise indefinite contract. See *Odom v. Bush,* 125 Ga. 184 (2) (53 SE 1013).

2. Count 3 of appellant's complaint sounded in tort and sought damages from appellee for an alleged invasion of appellant's privacy. Essentially, this count alleged that appellee, without obtaining permission or authorization from appellant, had caused certain materials (texts of personal interviews with and photographs of appellant) to be published in a book entitled Foxfire Four. The trial court granted summary judgment as to this count on the ground that the uncontradicted evidence showed that appellee published the materials forming the subject of appellant's claim under the right and authority of a parol license obtained from appellant. See *Tanner-Brice Co. v. Sims,* 174 Ga. 13 (2) (161 SE 819). Appellant contends that summary judgment was inappropriate as to this count because genuine issues of material fact remain as to whether the license was revoked automatically upon the termination of appellant's employment and, if so, as to whether publication after such termination was tortious. With this, we cannot agree.

The uncontradicted evidence submitted on summary judgment shows that the materials on which Count 3 is based had been collected at a time when appellant was in the employ of appellee. In large part, the materials had appeared with appellant's knowledge and without objection in a magazine published by appellee while appellant was in appellee's employ. The evidence further shows that appellant was familiar with and had

participated in the process of compiling materials for use in Foxfire Four. At no time prior to his termination in August, 1977 did appellant express disapproval or objection to appellee concerning the use of any materials. The materials in Foxfire Four were sent to the printers in August, 1976. The final galleys were approved in April, 1977. In November, 1977, Foxfire Four was made available for public sale.

Pretermitting whether appellee's use of appellant's pictures and interviews became unauthorized only upon the express revocation of permission by appellant (as the trial court found) or whether the termination of the employment relationship automatically effected the revocation of such permission without any further action on appellant's part (as appellant contends), revocation by either method would have been ineffective as to the executed parol license to use photographs of and interviews with appellant. *White v. Chapman,* 149 Ga. App. 409 (2) (254 SE2d 434). The uncontradicted evidence in this case shows that the parol license was accepted in a manner consistent with the license granted prior to appellant's discharge and prior to any revocation, and that appellee had incurred expenses in reliance on appellant's apparent or implied consent. Therefore, the consent was irrevocable. Since the evidence demanded a finding that the publication was pursuant to an irrevocable contractual right, the court properly held that any actionable tort for the invasion of appellant's privacy had been waived. *Tanner-Brice Co. v. Sims,* supra, (4). Compare Colgate-Palmolive Co. v. Tullos, 219 F2d 617 (5th Cir. 1955) where the license to publish the plaintiff's photograph was exercised in a tortious fashion (involving a misrepresentation), even assuming such use was otherwise authorized.

As the judgment of the trial court is not subject to reversal for any reason assigned, the judgment is affirmed.

*Judgment affirmed. Deen, C. J., and Carley, J., concur.*

SUBMITTED MAY 7, 1979 — DECIDED SEPTEMBER 4, 1979 —

*William H. Blalock, Jr., Charles W. Stephens,* for appellant.

*Robert B. Struble,* for appellee.