## 67202. BENCHMARK CARPET MILLS, INC. v. FIBER INDUSTRIES, INC.

BIRDSONG, Judge.

Summary Judgment—Fair Business Practices Act. In October, 1979, Fiber Industries, Inc., through its selling agent Celanese Fibers Marketing Company, entered into an agreement with Benchmark to sell Benchmark carpet yarn of a particular quality, one being Fortrel, a trade name for polyester belonging to Celanese, and the other a continuous dye nylon filament. Benchmark considered these two yarns of such a unique character and quality that in the event of future nonavailability, a substitute yarn could not be found for continued carpet manufacture of the same type as that utilizing the Fortrel or continuous dye nylon filament. There was an oral agreement that if Benchmark would use the Fortrel and the nylon filament yarn, Fiber Industries would furnish as much as Benchmark needed. However, Fiber Industries did not commit itself to furnish a specific amount, nor did Benchmark commit itself to use a specific amount or to specific future purchase orders. The agreement was only to purchase as needed and to supply as ordered. Benchmark prepared samples for display to its retailers throughout the United States and commenced filling orders of carpets purchased.

Apparently Celanese concluded that its yarn business was non-profitable and in July, 1980, decided to terminate that phase of its operations. Benchmark was notified of Celanese's decision to cease yarn manufacture in August, 1980. At that time, Fiber Industries had shipped to Benchmark yarn for which Benchmark was indebted to Fiber Industries in an amount in excess of $27,085. Benchmark made one payment, reducing the indebtedness to slightly in excess of $23,200. Benchmark refused further payments, asserting that Fiber Industries was indebted to Benchmark for certain advertising costs Fiber Industries had agreed to share in advertising the new carpets, the costs incurred by Benchmark in having to accept returns for carpets and samples which were no longer available or useful because of the nonavailability, and loss of business and reputation.

Fiber Industries then brought suit on the open account.

Benchmark did not deny the indebtedness but contended through counterclaims that its indebtedness was exceeded by damages it suffered through Fiber Industries' cancellation of the yarn supply. One of its counterclaims contended that Fiber Industries violated the provisions of the Deceptive Trade Practices Act (OCGA § 10-1-371 et seq. (Code Ann. § 106-701 et seq.)) or the Fair Business Practices Act (OCGA § 10-1-390 et seq. (Code Ann. § 106-1201 et seq.)) (hereinafter "FBPA"). The basis of this contention is that Celanese was aware that it was going to cease production of its yarn manufacturing when it entered into the oral contract to furnish as much yarn as Benchmark needed and that its misrepresentation amounted to consumer fraud. The trial court granted Fiber Industries' summary judgment as to each of Benchmark's counterclaims and awarded judgment in the amount of the undisputed open account. Benchmark limits this appeal to the grant of summary judgment in favor of Fiber Industries as to its counterclaim based upon the FBPA. *Held:*

Upon the reasoning of *State of Ga. v. Meredith Chevrolet,* 145 Ga. App. 8, 11-14 (2) (244 SE2d 15), affirmed 242 Ga. 294 (249 SE2d 87), we affirm the grant of summary judgment. "In order for conduct to be actionable under the FBPA, it must be within that class of conduct made unlawful by [OCGA § 10-1-393 (a) (Code Ann. § 106-1203)]: 'Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce . . .' Before determining whether the acts or practices are unfair or deceptive, the inquiry must be directed to the issue of whether the particular activity is within the regulatory scope of the Act, i.e., whether it occurred '. . . in the conduct of consumer transactions and consumer acts or practices . . .'

" '[T]he FBPA is no panacea for the congenital ills of the marketplace . . .' Rothschild, 'A Guide to Georgia's Fair Business Practices Act of 1975,' 10 Ga. L. R. 917 (1976). The legislature has evidenced a clear intent to limit the scope of the Act to the consumer market. The model Act on which [OCGA § 10-1-390 et seq. (Code Ann. § 106-1201 et seq.)] was based extended its coverage to all commercial dealings, outlawing 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of *any* trade or commerce . . . ,' whereas the Georgia statute limits its coverage to activities '. . . in the conduct of *consumer transactions and consumer acts or practices in* trade or commerce . . .' [OCGA § 10-1-393 (a) (Code Ann. § 106-1203)]. (Emphasis supplied.) (See generally, Smith, 'Georgia's Deceptive Trade Practices Legislation,' 10 Ga. S. B. J. 281 (1973)). . . .

"Taking into consideration the legislature's express and precise language which refines and limits the scope of the Act to consumer

commerce, [OCGA § 10-1-393 (a) (Code Ann. § 106-1203)], we hold that, to be subject to direct suit under the FBPA, the alleged offender must have done some volitional act to avail himself of the channels of consumer commerce. The allegedly offensive activity must have taken place 'in the conduct of . . . consumer acts or practices,' i.e., within the context of the consumer marketplace.

"In analyzing the context of a defendant's activities, two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact. It is only when the application of both of those factors indicates that the act or practice occurred within the context of the consumer marketplace that the fairness or deceptiveness of the act or practice need be examined. This is so because an act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA.

"To illustrate the application of the two-pronged standard by specific example, we would find that promotional advertising through a public medium addressed to the consuming public to create a demand for a product, if done in a deceptive manner, would be a violation of the FBPA; advertising in a limited circulation commercial or professional journal, even though deceptive, would not be violative if the medium chosen reasonably restricted the audience (i.e., market) to nonconsumers, even though the product so advertised were eventually to reach the hands of consumers. Deceptive advertisements, even though in a public medium, addressed to the nonconsuming public are not in contravention of the Act if such advertisements cannot be said to reasonably tend to encourage consumer transactions. Offering a product for sale by opening one's door to the general public should trigger the prohibitions of the act if some deceptive act or practice were involved; private offers for sale, communicated between merchants, would not.

"Applying the standard set out above to the . . . facts of this case, we find there has been no violation of the FBPA by the appellees. That is so because, although the deceptive act alleged . . . can reasonably be said to tend to encourage a consumer transaction (thus supplying the market impact factor), the medium chosen to introduce that act into the stream of commerce, i.e., a private sale limited to nonconsumers, is outside the context of *consumer* commerce. While the specific act [might under appropriate circumstances] be unlawful, and . . . prohibited by the Act, the context in which it occurred is without the regulatory authority of the Act." See also *Zeeman v. Black,* 156 Ga. App. 82 (273 SE2d 910).

The clear intent of these litigants was an agreement between

private business parties to purchase and sell yarn. Though Fiber Industries required Benchmark to display a Fortrel label on each finished carpet, there is no allegation or proof that the simple display of that label in any way was deceptive or would have misled either Benchmark or the consuming public as to the qualities of Fortrel. The label was to protect a trademark and made no representations as such as to the qualities of Fortrel. The requirement for the placement of the label was a part of the private agreement and not an advertising of product quality to the general public wherein the consuming public would have been misled to its prejudice. The crucial fact remains that the alleged offensive activity, the fraudulent failure to furnish an ample supply of the yarn, was a matter strictly between Fiber Industries and Benchmark and arose from a private agreement between those "nonconsumers." The facts of this case simply do not give rise to an application of the FBPA.

Fiber Industries seeks to impose upon Benchmark a ten percent penalty for the filing of a frivolous appeal. However, our consideration of the appellate papers filed satisfies us that Benchmark presented its appeal based upon at least arguable logic, and we cannot conclude that the appeal was filed solely for the purposes of delay. Accordingly, the motion for the imposition of the ten percent penalty is denied.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 21, 1983.

*Shepherd L. Howell, David G. Archer,* for appellant.
*H. Wayne Phears,* for appellee.