## 67936. ALONSO v. PARFET et al.

BIRDSONG, Judge.

Invasion of Privacy — Violations of Fair Business Practices Act. Kenneth B. Alonso is a medical doctor certified as an anatomical and clinical pathologist. He was employed by Laboratory Procedures South, Inc., a wholly owned subsidiary of Laboratory Procedures Inc., which itself is a wholly owned subsidiary of the Upjohn Company. R. T. Parfet is chairman of the board of Upjohn. LPI is the parent company of several regional companies (one of which is LPS servicing the southeastern United States) engaged in the business of providing medical testing services for physicians and hospitals.

Appellant Alonso was engaged as laboratory director of the LPS facility located in Decatur. When Alonso was employed in a managerial position, LPS caused to be printed clinical report forms, fee schedules, and promotional materials showing Alonso as the director of the laboratory. These documents were mailed to potential and actual clients of the services provided. As indicated, in general the clients of the services provided were doctors and hospitals although the ultimate consumer was the individual patient furnishing the sample (e.g., blood, urine, tissue) to be tested.

After Alonso had worked as director of the pathology lab for about three years, his services were terminated by LPS for reasons not material to the issues and dispute in this appeal. Following his termination as director, the evidence shows that LPS named a new person as director of the pathology services. However, new clinical report forms, fee schedules, promotional materials and related documents were not printed for use coextensively with the assumption of director duties by the newly named director. Accordingly, for a substantial period of time following Alonso's discharge, LPS continued to use business documents showing Dr. Alonso as the director of pathology services. Even after Dr. Alonso had on at least two occasions questioned the propriety of the sustained use of these misleading documents, LPS continued a diminishing use of the documents, ultimately ceasing their use in favor of those showing the new director.

Dr. Alonso filed suit against the chairman of the board of Upjohn and Upjohn's wholly owned subsidiaries, LPI and LPS seeking,

among other remedies, damages for the invasion of his privacy by the alleged improper and unauthorized use of his name for LPS' financial benefit as well as for alleged deceptive practices in violation of the Fair Business Practices Act. After extensive discovery, the trial court granted summary judgment as to Alonso's entire complaint. This grant forms the basis of Alonso's appeal. *Held*:

1. Invasion of privacy is in reality a complex of four related torts. These four torts may be described as: (1) intrusion into one's private affairs; (2) public disclosure of embarrassing private facts; (3) publicity causing an unfavorable appearance in the public eye; (4) appropriation to a defendant's advantage of a plaintiff's name. See 48 Calif. L. Rev. 383 (1960).

Under the facts of this case, the first three loosely described torts clearly have no applicability. However, in addition to and independent of the right of privacy, this case deals with a man's rights in the publicity value of his name, i.e., the right to grant exclusive privilege of using his name.

Accepting the distinction between causes of action involving injury to feelings, sensibilities or reputation, and those involving an appropriation of private rights in the nature of property rights for commercial exploitation, there is a fundamental distinction between the two classes of cases and the measure of damages to be applied. In the former class, general damages are recoverable without proof of special damages. *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68). In the latter case, the measure of damages is the value of the use of the appropriated publicity. O'Brien v. Pabst Sales Co., 124 F2d 167 (5th Cir.)

Considering this distinction, it is clear that plaintiff contends that his name was appropriated for commercial exploitation without his consent. The difficulty here, however, is that the damages sought may not be awarded in view of the relationship between the parties.

Alonso was a party to an employment agreement with LPS. As a part of this employment, LPS used on its business papers Alonso's name as a certified pathologist and director of the pathology department. It is obvious this was done by LPS under an implied license from Alonso. Under the facts, it may be asserted that this was done by agreement between Alonso and LPS. Thus Alonso was a knowledgeable party to the transaction under which his name was placed on the business documents of LPS. If the right to so use the name of the plaintiff rested upon a parol license, such license was primarily revocable; but this is not so when the licensee (LPS) has executed it, and in so doing has incurred expense. *Tanner-Brice Co. v. Sims*, 174 Ga. 13, 20 (2) (161 SE 819). As between private persons, a parol license, though primarily revocable, is not so when the licensee has executed it and in so doing has incurred expense. *City Council of Au-*

*gusta v. Burum & Co.*, 93 Ga. 68, 74 (19 SE 820).

Whether Alonso complained to LPS of the use of his name or whether the termination of the employment relationship automatically affected the revocation of such permission without further action on Alonso's part, revocation by either method would have been ineffective as to the executed parol license to use Alonso's name on LPS' business documents. The uncontradicted evidence shows that the parol license was utilized in a manner consistent with the license granted prior to Alonso's discharge and that LPS had incurred expenses in reliance on Alonso's apparent or implied consent to use his name on their documents. Since this evidence demands a finding that the use of the forms was pursuant to an irrevocable contractual right, the court properly held that any actionable tort for the invasion of Alonso's privacy (commercial exploitation of his name) had been waived. *Buchanan v. Foxfire Fund*, 151 Ga. App. 90, 92 (258 SE2d 751). There was no error in the grant of summary judgment based on invasion of privacy by the alleged illegal appropriation of Dr. Alonso's name.

For the same reasons set forth above, there was no implied promise in quantum meruit for the use of Dr. Alonso's name considering the implied license to use the name until the pre-printed material was either replaced or exhausted. That this was the understanding of the parties is manifested by the fact that Dr. Alonso sought no recovery for the use of his name prior to his discharge. See *Addison v. Southern R. Co.*, 108 Ga. App. 314, 315 (132 SE2d 833).

2. As to the grant of summary judgment to Count 6 dealing with deceptive practices under the Fair Business Practices Act, that complaint alleged a misleading of the consuming public by using the reputation and alleged expertise of Dr. Alonso as pathology director when such fact was not true. The basic flaw in that argument is the contention that those misled were a part of the consuming public.

Though there was evidence offered that on rare occasions when a patient was locally present, that patient would go directly to the pathology lab, ordinarily all samples submitted for testing came either from a doctor or from a hospital. Even in those cases where a patient went directly to the laboratory, the test was the direct result of a request of a doctor or a hospital. Furthermore, there is no contention that the advertising material, billings, or other documents were ever routinely mailed to the ultimate patient consumers rather than the intermediate doctors or hospitals.

In order for conduct to be actionable under the Fair Business Practices Act, it must be within that class of conduct made unlawful by OCGA § 10-1-372 which proscribes unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce. Before determining whether acts or

practices are unfair or deceptive, it must be determined whether the particular activity occurred in the conduct of consumer transactions and consumer acts or practices.

The legislature of this state evidenced a clear intent to limit the scope of the Georgia act to the consumer market. The model act on which the Georgia act was based extended its coverage to all commercial dealings outlawing unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. To the contrary, the Georgia statute limits its coverage to activities in the conduct of consumer transactions and consumer acts or practices in trade or commerce.

Considering the definition of consumer transaction in OCGA § 10-1-372, it is clear that under the facts of this case no consumer transaction was involved. In analyzing the context of LPS' activities, two factors are determinative: (a) the medium through which the act or factors is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact. It is only when the application of both of these factors indicates that the act or practice occurred within the context of the consumer market place that the fairness or deceptiveness of the act or practice need be examined. This is so because an act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA.

Applying the standards set out above to the facts of this case, we conclude there has been no violation of the FBPA by Laboratory Procedures South. That is so because although the deceptive act alleged which is the alleged appropriation of Alonso's name possibly can be said to tend to encourage a consumer transaction (the testing of urine, blood or tissue samples), the medium chosen to introduce that act into the stream of commerce was to doctors and hospitals, private, non-consumers who only order the services rendered. *Benchmark Carpet Mills v. Fiber Indus.*, 168 Ga. App. 932, 933-935 (311 SE2d 216). Thus even assuming that the misleading representation that Alonso was the director is an act falling within the proscription of the FBPA, the context in which it occurred is without the regulatory authority of the act. We conclude that the activities of LPS were in the conduct of neither consumer transactions nor consumer acts or practices within the contemplation of the FBPA and did not therefore subject LPS to direct suit under the act. *State of Ga. v. Meredith Chevrolet*, 145 Ga. App. 8, 12-13 (244 SE2d 15). There was no error in the grant of summary judgment as to this count.

*Judgment affirmed. Quillian, P. J., and Carley, J., concur.*

DECIDED MAY 1, 1984 —
REHEARING DENIED MAY 24, 1984 —

*John W. Bonds, Jr., Thomas A. Varlan*, for appellant.
*James M. Koelemay, Jr., Matthew H. Patton*, for appellees.