Rama K. NEMANI, Respondent/Cross–Appellant,

v.

ST. LOUIS UNIVERSITY, Appellant/Cross–Respondent.

No. SC 82288.

Supreme Court of Missouri, En Banc.

Dec. 5, 2000.

Thomas C. Walsh, Robert J. Radice, John M. Horas, Kenneth E. Fleischmann, St. Louis, for Appellant/Cross-Respondent.

Charles A. Seigel, III, Michael A. Wolff, St. Louis, for Respondent/Cross-Appellant.

BENTON, Judge.

Rama K. Nemani, Ph.D, sued St. Louis University (SLU) for appropriation of his name. The circuit court entered judgment on the jury's verdict for $300,000. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, section 10.* Reversed.

I.

In 1987, SLU hired Nemani as an assistant research professor in the Department of Pharmacological and Physiological Science. He held a joint appointment as a research chemist with the Veterans Affairs Medical Center. Each year from 1988 to 1996, Nemani and SLU signed a "Memo-

randum of Agreement Research Faculty" specifying as his duties:

> To carry out collaborative research with various members of the department, to participate in research-related programs such as journal club, seminars, evening college and advanced graduate courses, and to supervise graduate students in lab rotations and dissertation research.

Nemani was paid only from collaborative research grants, each requiring a prior successful application. From 1987 through 1994, Nemani's main source of income was a research project funded through the VA Medical Center, and carried out in collaboration with other members of the SLU Department. From September 1994 to 1996, he received no compensation for research projects with either SLU or the VA Medical Center. During that same time, however, Nemani and SLU signed annually the "Memorandum of Agreement" stating that Nemani would collaborate on research with members of the Department.

In 1993, the VA applied to renew the grant that had paid Nemani from 1987 to 1994. Although the application did not list Nemani's name, he helped prepare it. The VA application was denied and not funded. Around the same time, Nemani applied (unsuccessfully) for a different grant through another organization.

On September 30, 1993, SLU applied to the National Institute of Health (NIH) for a grant that included continuing the VA project. That application listed Nemani as a "Co Investigator," and as a "Research Assistant Professor" at SLU, with salary and benefits budgeted at about $60,000 yearly over the five-year grant. SLU did not obtain Nemani's express consent before listing him on the application, although Nemani expressed an interest in working on the project before SLU applied for the NIH grant.

In June 1994, NIH awarded SLU a five-year grant, renewable each year. The award, however, totalled $729,864 rather than the $974,290 SLU applied for, a difference of $244,426. NIH initially suggested that SLU use both Nemani and a lab technician at 75 percent "effort" (instead of 100 percent as requested in the grant application). SLU's principal investigator chose the lab technician for the project, instead of Nemani. Informed of this choice, NIH responded that it was the principal investigator's decision. In July 1994, Nemani discovered that his name was in the NIH application.

■ Nemani sued SLU for invasion of privacy by appropriation of his name. SLU argues on appeal that the trial court should have directed a verdict because Nemani failed to make a submissible case for name appropriation. In reviewing motions for directed verdict and for judgment notwithstanding the verdict, this Court takes the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence. *Duren v. Kunkel*, 814 S.W.2d 935, 936 (Mo. banc 1991).

## II.

■ The tort of invasion of privacy includes four separate causes of action: intrusion on the plaintiff's seclusion or private affairs, public disclosure of embarrassing private facts, publicly placing plaintiff in a false light, and appropriation of plaintiff's name or likeness for defendant's advantage. *Sullivan v. Pulitzer Broadcasting Co.*, 709 S.W.2d 475, 477 (Mo. banc 1986). At issue here is SLU's alleged appropriation of Nemani's name.

■ Not all uses of another's name are tortious. "It is the plaintiff's name as a symbol of ... identity that is involved here, and not ... as a mere name." *Haith v. Model Cities Health Corp. of Kansas City*, 704 S.W.2d 684, 687 (Mo.App.1986), *citing* William L. Prosser, "Privacy," 48 Cal.L.Rev. 383 (1960). Name appropriation occurs where a defendant "makes use of the name to pirate the plaintiff's identity for some advantage." *Id.* The right of

privacy, however, does not "subvert those rights which spring from social conditions, including business relations." *Munden v. Harris*, 153 Mo.App. 652, 134 S.W. 1076, 1079 (1911).

■ In the business relationship of this case, SLU did not appropriate Nemani's name. Nemani was hired to do research as an assistant research professor at SLU, and a research chemist at the VA. The Memorandum of Agreement required that he collaborate on research projects with other faculty members. Nemani impliedly consented to SLU's use of his name on grant applications. See *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 262 P.2d 808, 813 (1953); *Alonso v. Parfet*, 253 Ga. 749, 325 S.E.2d 152, 154 (1985).

Nemani invokes *Haith v. Model Cities Health Corp. of Kansas City*, 704 S.W.2d 684 (Mo.App.1986). There, doctors were named on a Continuation Grant Application *after* the applicant/employer terminated them. *Id.* at 687. The Court of Appeals held that the doctors made a submissible case for invasion of privacy due to name appropriation. *Id* at 689.

In the *Haith* case, the doctors were terminated *before* their names were listed on the grant application. The doctors did not consent, in any way, to the use of their names by the applicant/employer. In this case, Nemani was employed by the applicant/employer on the date of the application (and for nearly three years thereafter), for the purpose of working jointly on research projects funded by grants. SLU thus acted with implied consent. Nemani has no cause of action for name appropriation. The circuit court judge should have directed a verdict for SLU.

The judgment of the circuit court is reversed.

PRICE, C.J., LIMBAUGH, COVINGTON, WHITE, and HOLSTEIN, JJ., concur.

LOWENSTEIN, Sp. J., dissents in separate opinion filed.

WOLFF, J. not participating.

LOWENSTEIN, Special judge, dissenting.

I respectfully dissent. I would hold under the facts here that Nemani made a submissible case for invasion of privacy name appropriation. I would also affirm the denial of a submission for punitive damages and would reverse and remand for trial on the issue of actual damages.

The following facts, viewed in the light most favorable to the verdict are now noted. *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995). Nemani holds a doctoral degree in chemistry, and from 1981 to 1987 he researched in medicine for the University of Miami, Florida, and the University of Nebraska. In 1987, Nemani was hired by the Veteran's Administration (VA) hospital and by St. Louis University (SLU). Those two entities had a working relationship in medical research. Nemani was hired to work for both entities on a grant project, which was scheduled to end in September of 1994. Those who worked on that project were paid solely from the grant. In 1993, SLU learned that the grant would not be renewed, so Nemani needed to seek other employment. As such, Nemani contacted a former colleague, Dr. Randy Strong, who had moved from researching at SLU to working for a VA hospital in San Antonio.

Strong told Nemani that Nemani was named as co-investigator on a different SLU grant, which was funded by the National Institute of Health (NIH). On a grant, the principal investigator generally devises the research and methodology for the project, while a co-investigator participates in the research but generally has less direct responsibility. Nemani testified that he neither knew he was listed as a co-investigator nor expressly consented to the use of his name for the grant application. Nemani contacted the SLU ad-

ministrator who handled grants to investigate the matter. Nemani was permitted to see a copy of the NIH grant, but the administrator would not give him a copy. The SLU grant application showed that Nemani was indeed listed as co-investigator on the project, with an annual salary and benefits of more than $60,000 for the duration of the five-year grant.

Nemani filed a formal complaint with SLU, to which SLU never responded. Under the Freedom of Information (FOI) Act he requested all documents relating to the NIH grant. Nemani also contacted the coordinator and principal investigator, Harvey Armbrecht, who was listed on the NIH grant, to inquire whether SLU intended to use him for the grant. Nemani testified that he was told his expertise was incompatible with the project.

Nemani learned from his FOI request that before SLU was awarded the NIH grant, it had applied to the VA for a continuation of this grant, on which Armbrecht had been working for some time. In the application to the VA, SLU did not use Nemani's name, and the VA declined to renew the grant. In the application to the NIH, SLU used Nemani's name, and SLU was awarded substantial funding. Nemani also learned that the NIH had made recommendations to SLU regarding Nemani and a lab technician who was also named on the grant. Specifically, the NIH suggested that SLU use Nemani and a lab technician for 75 percent (instead of 100 percent) of the grant. Ultimately, SLU chose to use only the lab technician and not Nemani.

In support of its contention that Nemani impliedly consented to the use of his name, SLU notes that Nemani testified that he told Armbrecht at least twice before the NIH application was filed that he was interested in working on the NIH-funded project. Moreover, Armbrecht testified that he excluded Nemani because the NIH granted SLU $244,000 less than what SLU requested and that excluding Nemani from the project was within his discretion.

Nemani testified that he would have had no problem with his name on the application if he had received a job under the NIH grant. As a result of being listed on the grant and of learning of that listing through a colleague, Nemani testified that he suffered shock and humiliation. He offered no medical evidence as to his distress. Nemani also claimed a loss of "professional progress."

### Did the plaintiff make a submissible case?

The majority holds that Nemani did not make a submissible case for name appropriation, and, thus, the circuit court judge should have directed a verdict for SLU. I disagree. Appropriation of another's name or likeness occurs when a defendant "makes use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose," or for defendant's own purposes and benefit "even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one." Restatement (Second) of Torts § 652C, comment b (1977). In order to be liable for name appropriation, "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Restatement (Second) of Torts § 652C, comment c. "It is the plaintiff's name as a symbol of his identity that is involved here, and not his name as a mere name.... It is when he [the defendant] makes use of the name to pirate the plaintiff's identity for some advantage of his own ... that he becomes liable. It is in this sense that 'appropriation' must be understood." William L. Prosser, "Privacy," 48 Cal.L.Rev. 383, 403 (1960). "Appropriation" of another's name requires that the use of the name be without the owner's consent, either express or implied. *See Munden v. Harris*, 153 Mo.App. 652, 134 S.W. 1076, 1079 (1911).

The majority holds that Nemani did not have a cause of action for name appropriation because he impliedly consented to SLU's use of his name on grant applications. The majority contends that Nemani impliedly consented to the use of his name due to 1) his employment at SLU as an assistant research professor and as a research chemist at the VA, and 2) the memorandum of agreement he signed requiring him to collaborate on research projects with other faculty members.

The majority cites two cases in support of its conclusion. In *Johnson v. Boeing*, 175 Kan. 275, 262 P.2d 808 (1953), an employee sought damages for the use of a picture of him posing next to one of Boeing's aircraft in an advertisement. The employee agreed to having his picture taken and was aware at the time he posed for the photograph that it "might" be published. *Id.* at 809. The court in *Johnson* held that the employee explicitly consented to having his picture taken and had impliedly consented to the publication of the photographs by his acknowledgment that he thought the photograph "might" be published. *Id.* at 813–14. *Johnson* is distinguishable from the case at bar. The employee in *Johnson* consented to having his photograph taken and impliedly consented to it being published in a magazine. Here, Nemani was neither informed nor aware of the use of his name on the grant application.

The second case the majority relies upon is *Alonso v. Parfet*, 253 Ga. 749, 325 S.E.2d 152 (1985). In *Alonso*, the employee, a doctor, worked as a laboratory director for his employer. *Id.* at 153. The employee entered into an employment agreement with the employer. *Alonso v. Parfet*, 171 Ga.App. 74, 318 S.E.2d 696, 699 (1984), *rev'd* 253 Ga. 749, 325 S.E.2d 152. As part of his employment, the employee allowed the employer to use his name and title on business papers, amounting to an implied license. *Id.* After his job was terminated, the employer continued to use employee's name along with his title of "Laboratory Director" on forms and other documents that were sent to potential and actual clients of employer. *Id.* The court in *Alonso* held that "absent express agreement, the license granted or implied and made irrevocable by the expenditure of funds is the license to use the employee's name in connection with his employment. Such a license will normally terminate along with the employment." *Alonso*, 325 S.E.2d at 154. *Alonso* is different from this case because, again, the employee had consented to the use of his name on the employer's business documents. Further, the employee knew that his name was being used on documents after he was terminated since he protested such usage on at least two occasions. *Id.* at 153. Here, Nemani was not aware that his name appeared on the grant application until a month after the grant had already been awarded to SLU, whereas the employee in *Alonso* was aware of the use of his name and was attempting to stop such use by his employer. Neither *Johnson* nor *Alonso* adequately addresses the issues raised here.

The most factually similar case concerning name appropriation, *Haith v. Model Cities Health Corp. of Kansas City*, 704 S.W.2d 684, 687 (Mo.App.1986), is dismissed by the majority as different from the present case because the plaintiffs there had been terminated prior to the use of their names by the employer. In *Haith*, three doctors sued their employer for name appropriation, when the employer used their names on a "Continuation Grant Application" after the doctors had been terminated. *Id.* at 687. The Court of Appeals, Western District, held that the doctors made a submissible case for name appropriation. *Id.* at 689. The majority claims that the plaintiffs in *Haith* made a submissible case because they were terminated *before* their names were listed on a grant application, voiding any consent on their part. The court in *Haith* did not rely on the doctors' employment status in its holding, but rather found that "a jury

could find that there was *advantage* to defendant in using plaintiff's names to procure a government grant...." *Id.* at 688.

Here, a jury could find that the use of Nemani's name on the grant application gave SLU an advantage. The use of Nemani's name was not as a mere name, but as a symbol of his identity. *Id.* at 687. SLU used Nemani's name on the application because of his identity as a research chemist and assistant professor, and because of the reputation, prestige and standing that flows from such a title. Otherwise, SLU could have written in a lab technician's name if it were merely using Nemani's name as just a name.. The employer's use of the employee's name on the grant application cannot be trivialized here as "an incidental business use" and not actionable, for that, as in *Haith,* ignores that a jury could have found an employer advantage, *Id.* at 687–88.

Furthermore, Nemani did not impliedly consent to the use of his name on the grant application by virtue of his employment and the agreement he signed. Where, as here, the contract of employment is silent on the matter, an employer should not have the right to appropriate by implication of employment the employee's name for the employer's benefit. Nemani's employment by the university and the agreement he signed did not give the university carte blanche to use his name on grant applications without his knowledge and for its advantage. The one-page agreement that refers to collaboration with department members on research, participation in journal club and seminars, and supervision of graduate students does not support the conclusion that the agreement allows SLU to use Nemani's name on grant applications without his knowledge. The long and short of this case is SLU applied for a grant using Nemani's name as the number two person on the project, SLU failed to get the full amount of the grant, and never having told Nemani anything, excluded him from the grant project. Therefore, I would hold that Nemani has made a submissible case for invasion of privacy name appropriation, and allow a recovery of at least nominal damages and such other actual damages as can be proven. *Id.* at 689.

### Actual and Punitive Damages

The trial court did not allow Nemani to pursue as a measure of his damages his lost salary and benefits (totaling approximately $300,000 over the life of the grant application). Nor was Nemani allowed to claim damages for unjust enrichment to SLU. The trial court limited Nemani's claim to actual damages he suffered as a result of the invasion of his privacy. Nemani's evidence of damages consisted of his testimony that he suffered shock and humiliation because of SLU's actions. He offered no medical evidence. He also claimed a loss of "professional progress," testifying that grants such as the one involved in the case at bar are important to the reputation of scientists. The trial judge directed a verdict for SLU on punitive damages. The verdict on which the judgment was entered was for $300,000.

Finding that Nemani made a submissible case for name appropriation, it is necessary to address SLU's argument concerning lack of medical proof of emotional distress, as it was part of the actual damages judgment. Emotional distress has been labeled as mental suffering and anguish, which must be ongoing and continuous. *Wallace v. Van Pelt,* 969 S.W.2d 380, 386 (Mo.App.1998). This Court in *Bass v. Nooney Co.,* 646 S.W.2d 765, 772–73 (Mo. banc 1983), announced in a negligence suit for damages for emotional distress that emotional or mental injury must be medically diagnosable and of sufficient severity to be medically significant. The Court of Appeals, Eastern District, in *Signorino v. National Super Markets, Inc.,* 782 S.W.2d 100, 104 (Mo.App.1990) (false arrest), and *Fust v. Francois,* 913 S.W.2d 38, 48 (Mo. App.1995) (malicious prosecution), held that where the tort is intentional, the requirement of *Bass* for medical evidence to establish actual damages from emotional

distress is not applicable. I believe the better approach would be to require medical evidence, as in *Bass,* to prove damages for the invasion of privacy tort of name appropriation. 646 S.W.2d at 772. Even though this is an intentional tort, *Bass,* which required medical evidence where the plaintiff had been trapped in an elevator and showed no physical injury, should apply here. *Id.; Cf. Sofka v. Thal,* 662 S.W.2d 502, 511 (Mo. banc 1984) (intentional tort of invasion of privacy-intentional intrusion).

A reasonable observation would be that requiring medical evidence to support more than a nominal amount of monetary damages for an invasion of privacy leads to a hollow recovery. It is because emotional losses are so difficult to prove and put a monetary value upon that, I believe, the *Bass* rules should be invoked in these cases. Such is the situation in a trespass of real property suit where there are nominal damages flowing from a trespass, leaving the landowner the task of producing evidence of actual damages, which may be small or difficult to prove. *See Kitterman v. Simrall,* 924 S.W.2d 872, 878–79 (Mo. App.1996).

The proof of emotional damages in this case was nebulous, consisting only of Nemani's testimony. He said it was a shocking experience to see his name on the grant application and that he was "personally humiliated" when he and others learned he had not been used on the project. There appears to be little evidence as to Nemani's actual loss of "professional progress." On cross-examination he testified that he felt his reputation was damaged, but had no other evidence to support this feeling. He testified of the importance of participating in grants and how they contributed to the reputation and prestige of research scientists. Nemani claimed his reputation suffered because of SLU's unauthorized use of his name on the grant application coupled with his not being used to work on the grant. The $300,000 awarded by the jury and contained in the judgment was based solely on the shock and humiliation suffered by Nemani. (It could not be said the $300,000 verdict was based solely on the evidence here concerning lack of professional advancement.) Because I would require that these emotional damages be corroborated by medical or other independent proof, the entire issue of damages should be sent back for a determination by a jury. *State ex rel. Benz v. Blackwell,* 716 S.W.2d 270, 273 (Mo.App.1986).

Therefore, I would affirm the submission of the tort of invasion of privacy for name appropriation, affirm the denial of a submission for punitive damages, and reverse and remand the issue of damages for trial.